In the Matter of the Arbitration between **AUXILIARY POWER CORPORATION,** Owner of the S. S. POWERAUX ROGER, Petitioner,

and

**ECKHARDT & CO., G. m. B. H.,** Respondent.

Under Contract of Sale of the S.S. Poweraux Roger dated April 8, 1964.

**No. 66 Ad 632.**

United States District Court
S. D. New York.

Nov. 3, 1966.

Poles, Tublin & Patestides, by Theodore P. Daly, New York City, for petitioner.

Haight, Gardner, Poor & Havens, by John C. Moore, New York City, for respondent.

## OPINION

TYLER, District Judge.

Upon motion and cross-motion, respectively, to confirm and to vacate an award of arbitrators entered on May 2, 1966, the following facts are pertinent.

By contract of sale dated April 8, 1964, Auxiliary Power Corp. ("Seller") agreed to sell a vessel, the "S.S. Poweraux Roger", to Eckhardt & Co. ("Buyer") for scrapping. The contract provided that the Buyer would open an irrevocable letter of credit in favor of the Seller to secure payment of the purchase price, $94,223. The letter of credit was issued by Deutsche Bank and provided for payment upon presentation of certain documents, including a bill of sale warranting that the vessel was free and clear of all mortgages, liens and encumbrances, and cable advice from the tug master confirming that the vessel had arrived at the entrance to the delivery port in Germany, at which point, under the contract, it was to be "deemed delivered" to the Buyer.

The contract of sale further provided that the sale of the vessel was subject to the approval of the United States Maritime Administration. That agency subsequently approved the sale on condition that the Buyer furnish a $25,000 bond to secure its obligation to the Administration to scrap the vessel within a specified period.

The vessel was delayed in departing for Germany, and was delayed again enroute, stopping for repairs. When the vessel arrived at the delivery port, the towing company asserted a lien against it for claims aggregating $90,000. According to Buyer, the towing company refused to relinquish possession of the vessel until these amounts were paid or adequate security furnished. Buyer further states that Seller refused to pay the amount, at which point Buyer agreed to furnish two bank guaranties for the sum owed to the towing company. The vessel was then released to the Buyer.

Prior to the release of the vessel, again according to Buyer, the Seller attempted to draw on the letter of credit by presenting the necessary documents, including a bill of sale warranting that the vessel was free and clear of all encumbrances. Buyer then proceeded in the German courts to have the Seller's claim against Deutsche Bank for the amount of the letter of credit attached as security for any liability which Buyer might incur because of the bank guaranties furnished the towing company.

Thereafter, Seller commenced a proceeding in the Hamburg County Court seeking an order prohibiting the Buyer from moving, scrapping or otherwise disposing of the vessel. The court refused to grant the order, and its decision was affirmed on appeal to the Hanseatic Court of Appeal.

Buyer then began to scrap the vessel. Seller, pursuant to a clause in the contract providing for arbitration in New York of any dispute arising under the contract of sale, commenced arbitration proceedings. Pursuant to the arbitration clause, both Buyer and Seller selected an arbitrator. The two arbitrators were unable to agree on a third; thus a third arbitrator was appointed by this court.

In essence, the dispute before the arbitrators involved only two claims—Seller's and Buyer's claims for damages. After hearings, the arbitrators on May 2, 1966 made an award which may be summarized as follows: Buyer breached the contract of sale by accepting delivery of the vessel and thereafter preventing payment. The fair market value of the ves-

sel as scrap was found to be $135,000, and Buyer was ordered to pay such amount to the Seller. With respect to the towing charge, the arbitrators found that the Buyer was a "volunteer" in "taking steps to discharge the lien asserted by the towing company * * *", and thus Buyer's claim for damages growing out of its furnishing the guaranties was denied. Finally, the arbitrators found that "[t]he German court in deciding the application for an injunction by Seller did not pass upon the merits of the controversy submitted to the arbitrators".

Seller has moved pursuant to 9 U.S.C. § 9 for an order affirming the findings and award of the arbitrators.[1] Buyer, relying on 9 U.S.C. § 10(d) has cross-moved to vacate the award.[2]

■ Buyer raises essentially two major contentions: (1) the orders of the German courts were dispositive of the issues submitted to the arbitrators, who should have recognized such orders as res judicata; and (2) the arbitrators imperfectly executed their powers by failing to rule upon the letter of credit and the bank guaranties. Although the amount awarded is considerably in excess of the purchase price, Buyer does not question the size of the award.[3]

■ The Buyer preliminarily argues, however, that the Seller waived its right to arbitration when it applied to the German courts for a preliminary injunction. To constitute a waiver, a party's resort to the courts must evidence an intent to relinquish the right to arbitration. McElwee-Courbis Construc-

tion Co. v. Rife, 133 F.Supp. 790, 795 (D.C.Pa.1955); American Locomotive Co. v. Chemical Research Corp., 171 F.2d 115, 121 (6th Cir. 1948). In the instant case, there was no such intent to relinquish. Seller's petition to the German court asked only an interim injunction "until such time as a decision is reached in the arbitration currently pending in New York". Furthermore, it appears from Buyer's rejoinder to the application that the German proceedings were considered by both parties as nothing more than a request for temporary relief. Finally and in any event, the rule in this circuit is that the question of waiver is to be decided by the arbitrators rather than the court. World Brilliance Corp. v. Bethlehem Steel Co., 342 F.2d 362, at 364–365 (2d Cir. 1965). As indicated heretofore, the arbitrators expressly determined that there was no waiver of arbitration as Buyer claims.

■ Buyer next argues that " * * * the arbitrators exceeded their powers in assuming to redetermine an issue already disposed of by the decisions of the German courts". To support this contention, Buyer has submitted an affidavit stating that under German law, the denial of a "petition for injunctive relief is a final and irrevocable decision as to the rights of petitioner". Buyer thus concludes that all the rights and liabilities of the parties were finally decided in the German proceedings—i. e. that the latter were res judicata. I do not agree.

To begin with, even Buyer must concede that the German courts did not deal with the issue of damages for breach

---

1. Section 9 reads in part that
   "At any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award * * *"

2. Section 10(d) reads as follows:
   "In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
   * * * * *

   (d) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

3. It would make no difference, as the manner of computing as well as the measure of damages are questions for the arbitrators, and will not be overturned by the courts. Orion Shipping and Trading Co. v. Eastern States Petroleum Corp., 312 F.2d 299 (2d Cir. 1963).

of the contract. Thus, I must assume that at best Buyer's argument reduces itself to the assertion that somehow the German courts' decisions determined or laid down the "law of the case" which the arbitrators should have followed. But Buyer's affidavit on German law is exceedingly vague and ambiguous on the question of exactly what rights the denial of a temporary injunction is finally determinative. Nothing therein establishes or proves that the German courts were called upon to resolve the merits of the controversy. This view is reinforced by the papers submitted to those courts which indicate that the parties viewed the application as a temporary one, pending a decision on the merits in New York. It is also suggested by the language of the Hamburg County Court, which stated as one of the reasons for denying relief that:

> "The applicant has failed to satisfactorily prove the statutory conditions for the issue of a provisional decree, namely, that the realisation of any of her rights would be frustrated or considerably complicated without the interdiction to dispose of the 'POWER-AUX ROGER' as applied for."

In short, the German courts almost certainly considered no more than the question of temporary injunctive relief, and resolution of such an issue is not thought, by American courts at least, to be determinative of the ultimate issues in litigation.

■ In any event, the question of what effect should be given the German proceedings is a question of interpretation. The German decisions, as well as argument concerning their effect, were submitted to the arbitrators, who specifically found that the German courts had not reached a decision on the merits. It cannot be said that the arbitrators acted in "manifest disregard" of the law, and their decision cannot be overturned on this ground. See Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); Amicizia Societa Navegazione v. Chilian Nitrate and Iodine Sales Corp., 274 F.2d 805 (2d Cir. 1960).

■ Buyer's final contention is that the arbitrators imperfectly executed their powers because they failed to deal with the disposition of the letter of credit and the bank guaranties furnished by Buyer. But it is stated without contradiction in an affidavit verified by one of Seller's attorneys that neither of these matters was specifically recited by the parties in their submissions to the arbitrators. Obviously, therefore, I cannot conclude that the arbitrators imperfectly executed their powers within the meaning of 9 U.S.C. § 10(d) when they did not rule on issues not specifically submitted to them or not necessarily integral parts of those matters which were submitted.

■ As a practical matter, Buyer's real point here amounts to a concern that Seller may attempt to recover further damages in connection with the letter of credit and guaranties. This concern is demonstrably unjustified. First, the Seller in May, 1966, shortly after the arbitrators made the award, wrote Buyer and agreed to cooperate in cancelling the letter of credit and substituting other security for the bank guaranties. Second, if such "cooperation" and negotiation between the parties lead only to further controversies respecting these subjects it seems clear that the broad arbitration clause contained in the original contract would permit submission of these specific issues to the arbitrators.

The motion to vacate the award is denied; the motion to confirm the award is granted. It is so ordered.