**HUSSEY METAL DIVISION OF COP-
PER RANGE COMPANY, a cor-
poration, Appellant,**

v.

**LECTROMELT FURNACE DIVISION,
McGRAW–EDISON COMPANY,
a corporation, Appellee.**

**No. 71–1968.**

United States Court of Appeals,
Third Circuit.

Argued Oct. 5, 1972.

Decided Dec. 14, 1972.
As Amended March 5, 1973.

Frank J. Gaffney, Thorp, Reed &
Armstrong, Pittsburgh, Pa., for appel-
lant.

Alan Bruce Bowden, Buchanan, Inger-
soll, Rodewald, Kyle & Buerger, Pitts-
burgh, Pa., for appellee.

Before SEITZ, Chief Judge, and FOR-
MAN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

HUNTER, Circuit Judge.

Appellant Hussey Metals Division of
Copper Range Company appeals under
28 U.S.C. § 1292(a)(1) from an order of
the District Court staying proceedings
in a breach of contract suit brought by
appellant against appellee Lectromelt
Furnace Division McGraw-Edison Com-
pany.

■ This is a diversity action, and
we are thus bound by Pennsylvania law
according to Erie Railroad Company v.
Tompkins, 304 U.S. 64, 58 S.Ct.' 817, 82
L.Ed. 1188 (1938). The District Court's
order is appealable under 28 U.S.C. §
1292(a)(1). Merritt-Chapman and Scott
Corp. v. Pennsylvania Turnpike Com-
mission, 387 F.2d 768, 770 (3 Cir.,
1967). Under a series of documents, ap-
pellee sold, designed, and installed a fur-
nace for appellant. The parties dispute
whether these documents constitute one
contract or several. There was a docu-
ment, signed April 20, 1966 and revised
May 25, 1966, which provided for the
furnishing of a furnace by appellee.
There was a document dated May 25,
1966 which provided for the design of

the furnace, and a document signed September 7, 1966 which provided for construction and installation of this facility. The first document contained an arbitration clause [1] while the other two did not. Appellee installed the furnace and appellant was not satisfied with its performance. Appellant refused to make the final payment due under the contract and eventually brought this suit. Appellee counterclaimed for the final payment and demanded that the suit be stayed pending arbitration. The District Court ordered the parties to arbitration. In doing so, the Court did not decide whether the arbitration clause was applicable to this dispute. Instead it permitted the arbitrator to decide whether the parties had agreed to arbitrate appellant's claims.

Appellant presents several arguments for reversal:

(1) The District Court should have determined whether the arbitration clause was applicable to this case;

(2) Under settled Pennsylvania law, the arbitration clause is inapplicable by its own terms;

(3) The third document, for installation of the furnace, was the sole agreement between the parties. Since it contained no arbitration clause, the District Court was incorrect in sending the contract to the arbitrator. But even if the arbitration clause did belong in the installation contract, it was improper for the District Court not to decide whether it applied to this dispute;

(4) Appellee failed to make a timely request for arbitration;

(5) This suit revoked the arbitration clause.

Appellee's basic argument is that this dispute arose under the document for sale of the furnace. This document contains the arbitration clause, and that clause is applicable to this dispute.

■ Initially, it was incorrect for the District Court not to determine whether this dispute was covered by the terms of the arbitration agreement. It is settled under both Federal and Pennsylvania law that the court must decide whether a party is bound to arbitrate and what issues he must arbitrate. Arbitration is a matter of contract, and a party cannot be forced to arbitrate something which he did not agree to. John Wiley & Sons v. Livingston, 376 U.S. 543, 546, 547, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); Atkinson v.

---

1. The Arbitration Clause reads as follows:

"This Arbitration Clause is affixed to and is a constituent part of Proposal PIF–238–R1.

"Any disputes, claims or questions, which may arise hereunder and are not disposed of by agreement between the parties shall be subject to arbitration and shall be submitted to arbitration in accordance with the provisions then obtaining of the Standard Form of Arbitration Procedure of The American Arbitration Association and this Agreement shall be specifically enforceable under the prevailing arbitration law. Judgment upon the award rendered may be entered in the court of the forum, state or federal, having jurisdiction. It is further mutually agreed that the decision of the arbitrators shall be a condition precedent to any right of legal action that either party may have against the other.

"Work under the contract shall not be delayed during any arbitration proceedings except by agreement with the Purchaser.

"Notice of the demand for arbitration of a dispute shall be filed in writing with the other party to the contract. The demand for arbitration shall be made within a reasonable time after the dispute has arisen; in no case, however, shall the demand be made later than the time of final payment.

"The arbitrators, if they deem that the case requires it, are authorized to award to the party whose contention is sustained, such sums as they or a majority of them shall deem proper to compensate him for the time and expense incident to the proceeding and, if the arbitration was demanded without reasonable cause, they may also award damages for delay. The arbitrators shall fix their own compensation, unless otherwise provided by agreement, and shall assess the cost and charges of the proceedings upon either or both parties."

Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); Strauss v. Silvercup Bakers, Inc., 353 F.2d 555 (2d Cir. 1965); Howard v. International Brotherhood of Electrical Workers, Local Union No. 570, 423 F.2d 164 (9th Cir. 1970); Women's Society for the Prevention of Cruelty to Animals of Pennsylvania v. Savage, 440 Pa. 34, 269 A.2d 888 (1970); Schoellhammer's Hatboro Manor, Inc. v. Local Joint Executive Board, 426 Pa. 53, 231 A.2d 160 (1967); United Steelworkers of America v. Westinghouse Electric Corp., 413 Pa. 358, 196 A.2d 857 (1964).

In view of the favorable policy towards arbitration, Mendelson v. Shrager, 432 Pa. 383, 248 A.2d 234 (1968), doubts as to whether an arbitration clause may be interpreted to cover the asserted dispute should be resolved in favor of arbitration unless a court can state with "positive assurance" that this dispute was not meant to be arbitrated. *See* United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 4 L.Ed.2d 1409.

Because of the Pennsylvania Supreme Court decisions concerning similar arbitration clauses, we can state that the arbitration clause in this case was inapplicable by its own terms.

The clause in pertinent part reads:

"Any disputes, claims or questions, which may arise hereunder and are not disposed of by agreement between the parties shall be subject to arbitration . . .

"Work under the contract shall not be delayed during any arbitration proceedings except by agreement with the Purchaser.

"Notice of the demand for arbitration of a dispute shall be filed in writing with the other party to the contract. The demand for arbitration shall be made within a reasonable time after the dispute has arisen; in no case, however, shall the demand be made later than the time of final payment."

The time of final payment was to be the date of "acceptance of the apparatus, but in any event not later than 120 days after shipment."

Three times the Pennsylvania Supreme Court has held that similar language has meant that arbitration was required only while the work was in progress.

In Westmoreland Hospital Association v. Westmoreland Construction Company, 423 Pa. 255, 223 A.2d 681 (1966), the arbitration clause provided:

"7. Arbitration.—(2) It is mutually agreed that all disputes arising in connection with this contract shall be submitted to arbitration. . . .

"(b) The work under this contract shall not be stopped or delayed in any way during the arbitration proceedings except by written mutual consent of both parties to the contract, and such mutual consent shall stipulate whether extension of the time for completion of the contract will be authorized by such stoppage or delay.

"(c) Demand for arbitration in connection with any dispute shall be filed in writing with the Architect and with the other party to the contract. Any demand for arbitration shall be made within thirty days after [the dispute has] arisen if practicable, but, in any event, no demand for arbitration shall be made after the date of final payment except in the case of a dispute arising in connection with any guarantee provisions of Contract Documents." Id. at 258, 223 A.2d at 682.

The Court held that these provisions made it clear that the purpose for providing arbitration was to insure that completion of the work would not be interrupted and that it "obviously was not meant to apply where the contract was completed." It held this despite the expansive language in the initial clause.

In Emmaus Municipal Authority v. Eltz, 416 Pa. 123, 204 A.2d 926 (1964),

the Court held that similar language [2] meant that arbitration was intended only for disputes that arose while the work was in progress.

"The reason we infer that the arbitration clause in this contract was not intended to survive this contract is contained in the sentence in Clause B: 408 of the contract which says that a demand for arbitration shall be filed in no case later than the time for final payment. This language indicates that the parties only intended the arbitration clause to be used during the life of the operation of the contract and not to extend after the contract had been terminated by performance, breach or otherwise. The arbitration clause also contains a sentence which says that the contractor shall not cause delay of the construction during any arbitration proceedings. This language also indicates that the parties intended the arbitration procedure to be utilized only during the life of the contract and not after the termination of the contract." Id. at 124, 204 A.2d at 927.

If appellant were to win on the merits of his suit, then there will have been a breach. If appellee were to defend successfully, then there will have been performance since the installation of the furnace has long been completed and appellee has counterclaimed for the final payment. With either result, *Emmaus* is controlling.

Finally, in H. N. Bange v. Harrisburg West Motor Inn, Inc., 429 Pa. 654, 240 A.2d 370 (1968), the Pennsylvania Supreme Court affirmed, on the authority of *Emmaus*, a Common Pleas Court decision that the language of an arbitration clause [3] almost identical to the clause in this case meant that arbitration was not required after the work had been completed.

These cases are controlling here. *Emmaus* had been decided prior to the time that the parties signed the document, and it was appellee who submitted the

2. The arbitration clause in Emmaus Municipal Authority v. Eltz, 416 Pa. 123, 204 A.2d 926 (1964) reads:

"All questions subject to arbitration under this Contract shall be submitted to arbitration at the choice of either party to the dispute.

"The Contractor shall not cause delay of the work during any arbitration proceedings, except by agreement with the Owner.

"The demand for arbitration shall be filed in writing with the Engineer. In the case of an appeal from a decision of the Engineer the demand for arbitration shall be filed within ten (10) days of receipt of the Engineer's decision; and in any other case within a reasonable time after cause thereof and in no case later than the time of final payment, except as otherwise expressly stipulated in the Contract. If the Engineer fails to make a decision within a reasonable time, an appeal to arbitration may be taken as if his decision had been rendered against the party appealing." Appendix for appellants at 9.

3. The material parts of this arbitration clause read as follows:

"All disputes, claims or questions subject to arbitration under this contract shall be submitted to arbitration in accordance with the provisions, then obtaining, of the Standard Form of Arbitration Procedure of The American Institute of Architects, and this agreement shall be specifically enforceable under the prevailing arbitration law, and judgment upon the award rendered may be entered in the court of the forum, state or federal, having jurisdiction. It is mutually agreed that the decision of the arbitrators shall be a condition precedent to any right of legal action that either party may have against the other.

"The Contractor shall not cause a delay of the work during any arbitration proceedings, except by agreement with the Owner.

"Notice of the demand for arbitration of a dispute shall be filed in writing with the other party to the contract, and a copy filed with the Architect. The demand for arbitration shall be made within a reasonable time after the dispute has arisen; in no case, however, shall the demand be made later than the time of final payment, except as otherwise expressly stipulated in the contract." Brief for Appellant at 11, 12.

**560**

language to be used. Brief for Appellee at 5, 6.

Appellee's basic argument is that the parties signed three separate contracts and that this dispute relates to alleged violation of the sales contract (the document which contained the arbitration clause). The arbitration clause cannot be interpreted in the same manner as it was in *Westmoreland, Emmaus,* and *Bange* because those contracts were construction contracts and under the terms of the sale contract there was no construction to be done. The parties had to intend that the arbitration clause cover more than just delivering the furnace to appellant (installation, according to appellee, was provided by a separate contract without an arbitration clause).

This argument could be persuasive if the arbitration clause did not contain the "no demand" or the "work stoppage" clauses. Both clauses are inconsistent with appellee's position. It is difficult to rationalize their inclusion if there was no work that could have been stopped, as appellee contends.

The decision of the District Court is reversed. The order of that Court staying the proceedings is vacated, and the matter is remanded to the District Court for a decision on the merits.

Costs taxed against appellee.