## W. V. Pangborne & Co., Inc. v. Wark & Co.

*Robert F. Cushman*, for plaintiff.
*Thomas C. Sadler, Jr.*, for defendants.

HIRSH, J., January 7, 1974.—On August 14, 1967, defendant, Wark & Company (hereinafter referred to as "defendant") entered into an agreement (hereinafter referred to as "prime contract") with the contributors to the Pennsylvania Hospital (hereinafter

referred to as "owner") to construct a hospital facility. On September 14, 1967, defendant and plaintiff entered into a written agreement (hereinafter referred to as "agreement") whereby plaintiff agreed to complete the electrical work required in the construction of said facility. Thereafter, on June 9, 1972, plaintiff filed a writ of summons in assumpsit, and on April 11, 1973, filed a demand for arbitration with the American Arbitration Association averring damages as a result of delays caused by defendant. The matter is presently before this court on plaintiff's petition to compel arbitration and defendant's petition to cancel and void arbitration.

Defendant contends that plaintiff's demand for arbitration should be dismissed and the arbitrating proceedings cancelled because: (1) plaintiff instituted these claims in this court almost one year prior to its demand for arbitration; (2) the agreement between plaintiff and defendant does not provide for the arbitration of disputes between the parties; (3) that portion of the general conditions of the prime contract upon which plaintiff relies to demand arbitration is not intended to apply to disputes between defendant and its subcontractors after completion of the work, but is solely intended to administer the prime contract during the pendency of the construction of the hospital facilities; (4) demands for arbitration cannot be made after termination of the agreement; (5) plaintiff waived its alleged right to arbitration by failing to proceed according to the provisions of the general conditions of the prime contract; (6) plaintiff failed to submit its claims to the architect for decision as required by the arbitration provision of the general conditions; (7) the exclusive remedy for delays was a request for an extension of time; and (8) the agreement specifically precludes delay damage claims.

The arbitration clause in the general conditions of the prime contract clearly provides that all claims, disputes and other matters arising out of said contract shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. See 7.10.1 Arbitration. Plaintiff contends that said provision is incorporated by reference into the agreement by the following language of said Agreement:

"Article I—DESCRIPTION OF WORK

". . . and it is agreed that the Sub-contractor assumes for the portion of the work covered by this contract all obligations placed upon Wark in the contract of Wark as contractor and in the said drawings, specifications and general conditions of the contract, and/or specifications *which drawings, specifications and general conditions are hereby made a part hereof.*" (Italics supplied.)

After a careful examination of the above language and the arguments of both sides, this court must agree with the position of plaintiff, to wit: the parties to the agreement intended to incorporate by reference the specific provisions of the general conditions of the prime contract which establish arbitration as the method of settling disputes. The United States Court of Appeals for the Fifth Circuit in J. S. & H. Construction Company v. Richmond County Hospital Authority, 473 F. 2d 212 (1973), considered the same issue of whether the arbitration provision of a prime contract was incorporated by reference into the subcontract. The court found that: "incorporation by reference is generally effective to accomplish its intended purpose where, as here, the provision to which reference is made has a reasonably clear and ascertainable meaning." The court proceeded to hold that the arbitration provision was a valid and enforceable part of the sub-

contract. Where the parties by contract contemplate the settlement of disputes by arbitration, every reasonable intendment will be made in favor of their agreement: Povey v. The Midvale Co., 175 Pa. Superior Ct. 395, 105 A. 2d 172 (1954); Curran v. Philadelphia, 264 Pa. 111, 107 Atl. 636 (1919).

Defendant argues that the filing of the State court action 10 months before the demand for arbitration precludes plaintiff from arbitration. In McElwee-Courbis Construction Co. v. Rife, 133 F. Supp. 790 (M. D. Pa., 1955), plaintiff contractors instituted a civil action by complaint in which it alleged its right to proceed to arbitration as well as its claims for the court's consideration. While directing the parties to proceed to arbitration, the court held:

"The complaint clearly indicated [plaintiffs'] first consideration was to preserve their rights to arbitration . . . To constitute a 'waiver' there must be an intentional relinquishment of a right with both knowledge of its existence and intention to relinquish it."

Similarly, in Auxiliary Power Corporation v. Eckhardt & Co., 266 F. Supp. 1020 (S.D. N.Y. 1966), the court held:

"To constitute a waiver, a party's resort to the courts must evidence an intent to relinquish the right to arbitration."

On June 9, 1972, plaintiff filed a writ of summons which specifically stated:

"Plaintiff in and by this Civil Action does not waive or intend to waive, modify, or in any way impair or postpone its right to arbitration, but has filed this Civil Action to preserve, protect and maintain all of its rights and remedies under an agreement between plaintiff and defendant dated September 14, 1967."

Clearly, plaintiff intended to preserve its right to arbitration and not to relinquish it.

Defendant relies on the holding in Emmaus Municipal Authority v. Eltz, 416 Pa. 123, 204 A. 2d 926 (1964), when it alleges that plaintiff's demand for arbitration is void because the project had been completed, final payment made and the contract terminated. Defendant, however, ignores the important distinction between the arbitration clauses of Emmaus and the instant case. The court, in Emmaus, inferred that the arbitration clause was not intended by the parties to survive the contract from a clause in said contract which states: "a demand for arbitration shall be filed *in no case later than the time for final payment.*" (Italics supplied.) The parties here did not express an intention to so limit their rights to arbitrate. On the contrary, paragraph 7.10.2 of article 7 of the General Conditions provides:

"[I]n no event shall it [the demand for arbitration be made after institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations."

Thus, the parties intended disputes to be arbitrated prior to the expiration of the applicable statute of limitations, i.e., within six years from the accrual of the claim in accordance with the statute of limitations for contract actions: Act of March 13, 1713, 1 Sm. L. 76, sec. 1, 12 PS §31 (1953). In United States Fidelity and Guaranty Company v. Bangor Area Joint School Authority, 355 F. Supp. 913 (E.D. Pa., 1973), the court was dealing with the precise arbitration clause in effect here and found that the absence of a clause providing for demands for arbitration to be made before the time for final payment is consistent with the intention that the arbitration clause remain viable after completion of the work. The court concluded:

"This arbitration clause is broad and comprehensive.

Thus resolving any doubts in favor of arbitration, we conclude that the present dispute falls within the purview of the arbitration clause."

Defendant's reasons, nos. 5, 6, 7 and 8, as stated above, for prohibiting arbitration involve questions relating to the interpretation of various provisions of the prime contract and agreement.

"In view of the favorable policy towards arbitration, Mendelson vs Shrager, 432 Pa. 383, 248 A. 2d 234 (1968), doubts as to whether an arbitration clause may be interpreted to cover the asserted dispute should be resolved in favor of arbitration unless a court can state with 'positive assurance' that this dispute was not meant to be arbitrated. Hussey Metal Division vs Lectromelt Furnace Division, 471 F. 2d 556 (1972). See United Steelworkers of America vs Warrior & Gulf Naviation Co., 363 U.S. 574, 582-583, 80 S. Ct. 1347": Hussey Metals v. Lectromelt Furnace, 471 F. 2d 556 (3rd Cir. 1972).

This court believes such issues are proper questions for the arbitrators.

Under the Uniform Arbitration Act of April 25, 1927, P. L. 381, 5 PS §163, and within the equitable powers of this court to enforce the performance of contracts, this court can compel a party to participate in arbitration. This court is in agreement with the argument of plaintiff's counsel that arbitration agreements should be liberally construed so as to give effect to the primary intention of the parties, namely, the swift and orderly disposition of claims. In light of the foregoing, this court believes that this dispute should proceed to arbitration in an orderly fashion.

Accordingly, it is, therefore, ordered and decreed that the arbitration proceedings instituted by plaintiff on April 11, 1973, shall proceed and defendant's petition to cancel and void arbitration is denied.