**GAVLIK CONSTRUCTION CO.**

v.

**H. F. CAMPBELL CO.**

v.

**The WICKES CORP.**

Civ. A. No. 74–600.

United States District Court,
W. D. Pennsylvania.

Feb. 24, 1975.

Ralph E. Smith, Ambridge, Pa., for plaintiff.

Keith West, Pittsburgh, Pa., for defendant.

Allen T. Lane, Pittsburgh, for third party defendant.

## OPINION

KNOX, District Judge.

This is a diversity action removed by the defendants from the Court of Common Pleas of Allegheny County. The plaintiff Gavlik Construction Company (Gavlik) alleges that it performed certain construction work for the defendant pursuant to several subcontract agreements, but that it has not been paid. The defendant H. F. Campbell Company (Campbell), the general contractor, has joined as third-party defendant the Wickes Corporation (Wickes) the owner of the completed construction (a large warehouse and store building in Allegheny County, Pennsylvania) and ultimate beneficiary of plaintiff's work. The defendant by motion as amended November 19, 1974, seeks a stay of these proceedings pending arbitration and an order compelling plaintiff, defendant and third-party defendant to submit to a consolidated arbitration. The plaintiff opposes this motion, while the third-party defendant has chosen not to respond. The third-party defendant has, however, in its answer to the third party complaint asserted that the controversy between Campbell and itself is subject to arbitration pursuant to contract.

Initially, we reject Gavlik's argument that Campbell has waived whatever contractual rights they have to arbitration by bringing in Wickes as a third-

party defendant and attempting to consolidate this action with Harry Dunn Company v. Campbell Company, Civil Action No. 74–501, pending before Judge McCune of this court, which involves another subcontractor under the same general contract. Campbell filed its original motion to stay on June 20, 1974, the same date on which it removed this action from the Court of Common Pleas of Allegheny County. Its later actions in joining Wickes and attempting consolidation with Civil Action No. 74–501 were obviously to bring all these parties before the court and force them to join in one arbitration proceeding. Such action is certainly not waiver but is a procedurally sound attempt to achieve a desired result.

Campbell contends that authority to stay this action is found in Section 3 of the United States Arbitration Act, 9 U.S.C.A. § 1 et seq. The Supreme Court decision in Bernhardt v. Polygraphic Company, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956), has settled that Section 3 of the Arbitration Act is subject to the limitation contained in Section 2, viz, it applies only to maritime transactions and contracts evidencing a transaction involving commerce, as defined in Section 1.

The question of whether the contract before us evidenced a transaction involving interstate commerce is not readily resolved, however. The question, as posed by Judge Lumbard in Metro Industrial Painting Corp. v. Terminal Construction Co., 287 F.2d 382 (2d Cir. 1961), is:

"not whether, in carrying out the terms of the contract, the parties *did* cross state lines, but whether, at the time they entered into it and accepted the arbitration clause, they *contemplated* substantial interstate activity." [Emphasis in original].

■ Campbell would look at the construction project as a whole, and asserts that it was a contract between a California owner and a Michigan general contractor for construction in Pennsylvania,[1] that it involved numerous non-Pennsylvania subcontractors, and required substantial crossings of state lines by persons and materials. Gavlik, on the other hand, would look simply to the immediate contracts between itself and Campbell, which it asserts did not require it to cross state lines but simply to engage in a purely local construction project. The subcontracts themselves, of course, refer to the general contract and impose on Gavlik certain obligations toward it. Determining whether the agreement involves interstate commerce is made more difficult by the sparse record before us, which consists of copies of the agreements and the deposition of Robert J. Birdsall, Treasurer of Campbell. The remaining facts presented to us are statements of counsel in their briefs—material that we are not to consider as record evidence absent a specific admission by the opposing side. Braden v. University of Pittsburgh, 477 F.2d 1 (3d Cir. 1973). It appears, however, that we can dispose of this motion at this time without determining whether the United States Arbitration Act is applicable.

The applicability of both the United States Arbitration Act, 9 U.S.C. § 1 et seq., and the Pennsylvania Arbitration Act of 1927, 5 Pa.Stat. 161–179, has been analyzed by the Third Circuit in Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Commission, 387 F.2d 768 (3d Cir. 1967). That case involved a controversy over the construction of a tunnel known as Allegheny No. 2 on the Pennsylvania Turnpike. Recognizing that under Bernhart v. Polygraphic Company of America, supra, the United States Arbitration Act

---

1. From the pleadings, it is established that Wickes is a Delaware corporation with its principal place of business in San Diego, California. Campbell, a Michigan corpora-

tion, and Gavlik, a Pennsylvania corporation, each has its principal place of business within its state of incorporation.

was applicable only to agreements evidencing "a transaction involving commerce", the Third Circuit held that it was unable to make such a factual determination on appeal as the record before it consisted merely of allegations of diversity of citizenship but made no reference to commerce.

■ The Third Circuit then turned to the Pennsylvania Arbitration Act of 1927, which like the federal act, expressly authorizes a stay of proceedings pending arbitration. While Section 16 of the Pennsylvania Arbitration Act required that that Act apply to all contracts in which the Commonwealth and its agencies are parties, the Merritt-Chapman & Scott Corporation case went on to hold that explicit statutory authority to stay proceedings was unnecessary:

"[Staying proceedings pending arbitration] is one which is within the inherent power of a court and does not require statutory authority. As Mr. Justice Cardozo said in Landis v. North American Co., 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936), the power to stay proceedings is 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for the litigants.' Moreover, in staying the action pending arbitration we do no more than what a Pennsylvania court would do if the proceeding were before it, and we thereby effectuate in this diversity action the policy of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)." [Footnote omitted]. 387 F. 2d at 773.

■ The question then becomes whether the parties did in fact agree to arbitrate disputes of this kind.[2] Whether a party is bound to arbitrate and what issues he must arbitrate is a matter for the court. Hussey Metals Division v. Lectromelt Furnace, 471 F.2d 556 (3d Cir. 1972). Arbitration is a matter of contract, and a party cannot be forced to arbitrate something which he did not agree to. John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); Hussey Metals Division, supra. Under Pennsylvania law, with its favorable policy towards arbitration,[3] doubts as to whether an arbitration clause may be interpreted to cover the asserted dispute should be resolved in favor of arbitration unless the court can state with "positive assurance" that the dispute was not meant to be arbitrated. Hussey, supra.

The arbitration clause in the subcontract agreements is Article 22, a form provision that provides as follows:

"Any disagreement arising out of this Agreement or any other Contract Document or from the breach thereof shall be submitted to arbitration, and judgment upon the award rendered may be entered in the Court of the forum, state or federal, having jurisdiction. It is mutually agreed that the decision of the Arbitrators shall be a condition precedent to any right of legal action that either party may have against the other. The Arbitration shall be conducted pursuant to the Construction Industry Rules of the American Arbitration Association prevailing at the time arbitration proceedings are initiated. The arbitra-

---

2. Plaintiff has not briefed the specific question of whether under Pennsylvania law the arbitration provision applies to this dispute. However, from his reference in his brief to the holding of Hussey, supra, that the arbitration clause is inapplicable, we assume that plaintiff does contest the applicability of the arbitration clause, and we will therefore discuss the applicable law.

3. The Penna. Arbitration Act of 1927, 5 P.S. § 161 provides:
"A provision in any written contract, except a contract for personal services, to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

tors shall be a panel of three—one selected by the Contractor, one selected by the Subcontractor, and the third selected by the first two Arbitrators. The Subcontractor shall not cause a delay of its work due to any disagreement or dispute or during any arbitration resulting therefrom, except by agreement with Contractor."

■ Article 22 by its own terms applies to "[a]ny disagreement arising out of this agreement or any other Contract Document or from the breach thereof . . . " The only serious question of interpretation is raised by the last sentence of Article 22, providing that the subcontractor shall not "cause a delay of its work due to any disagreement or dispute or during any arbitration resulting therefrom, except by agreement with Contractor." We hold that this language does not limit the broad applicability of the first sentence.

In Hussey Metals, supra, and the three Pennsylvania Supreme Court cases cited therein,[4] it was held that such language is an indication that the purpose of providing for arbitration was to insure that completion of the work would not be interrupted and that the arbitration provision was therefore not meant to apply where the contract was completed but for payment. However, those cases, although they contained arbitration and no-work-stoppage provisions similar to the present case, also contained specific provision that the demand for arbitration could not be made "later than the time [or date] of final payment." The present case does not involve a provision of that kind. The court believes that under a fair reading

of this agreement the arbitration provision applies to this controversy despite completion of the work. The no-work-stoppage clause provided Campbell with an additional right; it was not intended to limit its bargained for right of arbitration. The court cannot state with "positive assurance" that this dispute was not meant to be arbitrated.

■ As to the arbitration provision of the general contract between Campbell and Wickes, we note that Wickes has not responded to the motion to compel arbitration and has asserted in its answer to the third party complaint that their dispute is subject to arbitration. As the general contract does appear on its face to require arbitration, we will under the circumstances compel Wickes and Campbell to arbitrate.[5]

■ Having determined that both Gavlik and Wickes are obliged to arbitrate their disputes with Campbell, the next question is whether consolidated arbitration is properly ordered. We hold that it is not.

The court notes once again that arbitration is a matter of contract, and parties cannot be forced to arbitrate matters they have not agreed to arbitrate. John Wiley & Sons v. Livingston, supra.

Campbell argues that the arbitration clause in the subcontracts, Article 22, is very broad, requiring Gavlik to arbitrate any disagreement "arising out of this agreement or any other contract document". Elsewhere in the subcontracts (Article 7), "contract documents" are defined to include the general and supplementary agreements between Campbell and Wickes. Campbell also relies on the Article 7 provision that Gavlik "shall

---

4. Westmoreland Hospital Assn. v. Westmoreland Construction Co., 423 Pa. 255, 223 A.2d 681 (1966) ; Emmaus Municipal Authority v. Eltz, 416 Pa. 123, 204 A.2d 926 (1964) ; and Bange v. Harrisburg West Motor Inn, Inc., 429 Pa. 654, 240 A.2d 370 (1968).

5. "18.1 All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, except for claims which have been waived by the making or acceptance of final payment

as hereinafter provided, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then pertaining unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof."

be bound to the contractor by the terms and provisions of all the Contract Documents, and assumes toward the contractor, with respect to the subcontractor's work, all of the obligations and responsibilities which the contractor, by the Contract Documents, has assumed toward the owner." Campbell further relies on the provisions of Article 25, giving Campbell the right to withhold payment to the subcontractor until received from Wickes, and of Article 24, making the subcontractor liable for the costs expended in recovering from Wickes payments withheld for work done by the subcontractor. Campbell cites Uniroyal, Inc. v. A. Epstein and Sons, Inc., 428 F. 2d 523 (7th Cir. 1970), holding that the subcontractor is bound to participate in a consolidated arbitration. Campbell also cites Robinson v. Warner, 370 F. Supp. 828 (D.R.I.1974), in which the court construed Rules 81(a)(3) and 42(a) of the Federal Rules of Civil Procedure to require consolidated arbitration among the contractor, the architect, and the owner. The law on this question, is not settled, however, as the Robinson court, particularly notes.

We cannot accept defendant's broad reading of the arbitration provision. The agreement itself fails to specify consolidated arbitration and the provision in Article 22 that the arbitrators be chosen "one by the contractor" and "one by the subcontractor" (and the third by the first two), clearly implies that only those two parties were expected to participate in any arbitration. No mention is made of how an arbitration would occur involving a three-party dispute. This alone distinguishes Uniroyal, Inc., supra.

Further, all the provisions relating to obligations of the subcontractor toward Wickes, such as Article 7, are limited to those arising out of the work done, or required to be done, by the subcontractor. Nothing in the contract, for instance, would require Gavlik to litigate, in Campbell's behalf, disputes arising that involve only Campbell, Wickes, and some other subcontractor. It is this kind of matter that would be prejudicial to Gavlik were we to require it to consolidate its arbitration with the proceedings between Campbell and Wickes. While there are obviously many common questions of fact that relate both to Campbell's claim against Wickes and to Gavlik's claim against Campbell, certain matters raised by Wickes' answer and counterclaim appear unrelated, viz, "gross negligence, poor workmanship, willful misconduct and lack of good faith in improperly designing, engineering and supervision [and thereby causing] a land slide".

In addition, if the proceedings were consolidated, the results feared by Campbell as inconsistent may well occur. Campbell's obligations toward Gavlik— payment for work it instructed Gavlik to perform—may not coincide with Wickes' obligations toward Campbell—performing only necessary and satisfactory work. We, of course, do not decide the rights or obligations of the parties at this time; we merely note that Campbell's assertion that it is merely a middleman, and that what Wickes pays Campbell determines what Campbell owes Gavlik, may be an oversimplification.

As to Campbell's assertion that Gavlik obligated itself to undertake certain costs of enforcing payment against Wickes, that appears to be a matter of contract for the arbitrator to determine.

We note, too, that both the arbitration clause in the general contract and in the subcontracts specify arbitration according with the Construction Industry Arbitration Rules of the American Arbitration Association (AAA). We do not have those rules before us, and of course, we would not attempt to interfere with their application. However, the court is confident that AAA is quite familiar with disputes involving contractor, subcontractor and owner, and that their procedures accommodate situations of this kind to avoid inconsistent awards. In any event, should a party prove to have been prejudiced, that mat-

ter can be taken up at an appropriate time.

For the present, to avoid unduly complicating the matter, we will order all proceedings stayed pending arbitration between the original parties.