**Pensurdata, Inc. v. Fast and Accurate Data Recording**

*A. Makadon*, for plaintiff.
*John Mattione*, for defendant.

KALISH, *J.*, April 4, 1975—On August 8, 1974, Fast and Accurate Data Recording (hereinafter known as "Fast and Accurate"), entered into an agreement with Pensurdata, Inc. (hereinafter known as "Pensurdata"), whereby Fast and Accurate would provide certain computer programming services for Pensurdata within specified time periods for compensation. Fast and Accurate did not perform according to schedule. Viewing the delay in performance as a breach of contract, Pensurdata informed Fast and Accurate by letter on January 14, 1975, that it had terminated the agreement and had made alternative arrangements for the completion of the work. Fast and Accurate disagreed with Pensurdata's conclusion that it had failed to meet its contractual commitments and contended instead that the delay has been caused by Pensurdata's failure to comply with its duties under the agreement. Fast and Accurate demanded that the dispute be submitted to arbitration, as provided for in the agreement. Pensurdata refused to participate in any arbitration proceeding, contending that the termination of the contract precluded the invocation of the arbitration clause. In March 1975, Pensurdata instituted an action in assumpsit for damages and an action in equity to

enjoin Fast and Accurate from proceeding to arbitration. Fast and Accurate filed preliminary objections in both actions as well as a petition to appoint an arbitrator to which Pensurdata filed answers.

The key issue before this court is whether or not the dispute must be submitted to arbitration. We hold that it need not.

When a dispute concerning interpretation of an arbitration clause arises, it is the duty of the court to decide whether a party is bound to arbitrate and what issues, if any, are arbitrable: Hussey Metal Division of Copper Range Company v. Lectromelt Furnace Division, McGraw-Edison Company, 471 F. 2d 556 (3d Cir. 1972); Women's Society for the Prevention of Cruelty to Animals v. Savage, 440 Pa. 34, 269 A. 2d 888 (1970); United Steelworkers of America, AFL-CIO v. Westinghouse Electric Corporation, 413 Pa. 358, 196 A. 2d 857 (1964).

Arbitration is a matter of contract, and a party cannot be forced to arbitrate something he did not agree to: United Steelworkers of America v. Warrior of Gulf Navigation Co., 363 U.S. 574, 80 S. Ct. 1347 (1960); Hussey Metal Division of Copper Range Company v. Lectromelt Furnace Division, McGraw-Edison Company, supra. Whether the parties have agreed to arbitration under the circumstances turns on their intent as ascertained from the language used, its context within the agreement and the circumstances surrounding its formation and execution: Bruno v. Pepperidge Farm, Inc., 256 F. Supp. 865 (E.D. Pa., 1966).

The intent of the parties is expressed in the language of the agreement. The language of the arbitration clause itself indicates that the parties intended the arbitration clause to be operative only

during the life of the agreement and not after its termination. The clause reads, in pertinent part:

"19. Arbitration:

"Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this Agreement which is not disposed of by agreement shall be decided by Pensurdata reducing their decision to writing. . . . The decision shall be final and conclusive and binding on both parties unless within thirty (30) days from the receipt of a copy of the decision the Consultant(*Fast and Accurate*) mails or otherwise furnishes to Pensurdata a written request for a decision by a Board of Review. . . . Pending a final decision of the Board of Review, the *Consultant (Fast and Accurate) shall proceed diligently with the performance of the contract* and in accordance with Pensurdata's decision." (Emphasis supplied.)

The last sentence bears a striking similarity to language which the Supreme Court of Pennsylvania has focused on in determining the intent of the parties. In three cases, Emmaus Municipal Authority v. Eltz, 416 Pa. 123, 204 A. 2d 926 (1964), Westmoreland Hospital Association v. Westmoreland Construction Company, 423 Pa. 255, 223 A. 2d 681 (1966), and Bange v. Harrisburg West Motor Inn, 429 Pa. 654, 240 A. 2d 370 (1968), the Supreme Court held that an arbitration clause providing that the contractor shall not cause delay during an arbitration proceeding indicated an intent that arbitration was available only during performance of the contract and not after termination of the contract. In Westmoreland Hospital Association v. Westmoreland Construction Company, supra, ar-

bitration was enjoined despite a provision for arbitration of "all disputes arising in connection with this contract," language more expansive than that provided in the instant arbitration clause and that "the work under this contract shall not be stopped or delayed in any way during the arbitration proceedings." Moreover, Flightways Corp. v. Keystone Helicopter Corp., 459 Pa. 660, 331 A. 2d, 184 (1975), where the court held that the dispute must be referred to arbitration, is not controlling here. In Flightways, the arbitration clause under consideration contained very broad language and *made no reference to performance during arbitration*. In addition, the issue before the court was the viability of an arbitration clause contained in an allegedly fraudulent existent contract, not one already terminated.

Our conclusion that the dispute is not arbitrable is reinforced by language contained elsewhere in the agreement. Clause 20, "Termination," provides, in pertinent part:

"Anything in the Agreement to the contrary notwithstanding, Pensurdata may terminate the Agreement at any time. . . . In such event Consultant *(Fast and Accurate)* shall promptly terminate all work. . . ." (Emphasis supplied.)

Such language, read in conjunction with the "continuation of performance" language of the arbitration clause, is further indication that arbitration was intended as the means of resolving disputes during performance of the agreement and before its termination.

We conclude that, as the arbitration clause was to be used only during the life of the contract, termination of the contract and cancellation of Fast and

Accurate's obligation to perform eliminated the necessity to resort to arbitration to settle the dispute between the parties. In light of our conclusion that the arbitration clause is inoperative, we need not address ourselves to the question as to whether the dispute falls within the scope of the arbitration provision. Moreover, we express no view on the merits of the dispute as judicial inquiry is limited to determining whether the dispute must be decided by arbitration: Flightways Corporation v. Keystone Helicopter Corporation, supra.

It is, therefore, ordered and decreed that:

1. Pensurdata's request that Fast and Accurate be enjoined from proceeding to arbitration contained in its complaint in equity is granted.

2. Fast and Accurate's preliminary objections to Pensurdata's complaints in assumpsit and in equity are overruled.

3. Fast and Accurate's petition for appointment of arbitrator is denied.

4. The rule to show cause why Fast and Accurate should not be enjoined from proceeding to arbitration is discharged.

## ORDER

And now, April 4, 1975, the order of April 3, 1975, is vacated and in lieu thereof, it is hereby ordered and decreed that:

1. Pensurdata's request that Fast and Accurate be enjoined from proceeding to arbitration contained in its complaint in equity is granted.

2. Fast and Accurate's preliminary objections to Pensurdata's complaint in equity are overruled.