GAVLIK CONSTRUCTION COMPANY, a Pennsylvania Corporation, Appellant in Nos. 75–1446 and 75–2043,

v.

H. F. CAMPBELL COMPANY, a Michigan Corporation, Appellant in Nos. 75–1447 and 75–2044,

v.

The WICKES CORPORATION.

Nos. 75–1446, 75–1447, 75–2043 and 75–2044.

United States Court of Appeals, Third Circuit.

Argued Sept. 18, 1975.

Decided Oct. 31, 1975.

Robert W. Lewis, Rowley, Smith & Lewis, Ambridge, Pa., for Gavlik Const. Co.

David M. FitzGerald, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., Keith H. West, Thorp, Reed & Armstrong, Pittsburgh, Pa., for H. F. Campbell Co.

James A. Wood, Wayman, Irvin, Trushel & McAuley, Pittsburgh, Pa., for third party appellee, ·The Wickes Corp.

Before SEITZ, Chief Judge, and RO-SENN and GARTH, Circuit Judges.

## OPINION ·OF THE COURT

GARTH, Circuit Judge:

This diversity case presents the questions of whether a subcontractor-contractor-owner dispute must be arbitrated, and, if so, whether the parties' agreements provide for three-party consolidated arbitration. We hold, as did the district court, that there has been no waiver of the contractual right to arbitrate and that legal proceedings were properly stayed pending arbitration. However, we further hold, unlike the district court, that the subcontractor and owner contracts provide for consolidated arbitration. We, therefore, affirm so much of the district court's order as stayed proceedings but vacate the remainder for the entry of an order compelling consolidated arbitration. ‾

### I. PROCEDURAL HISTORY

■ Plaintiff Gavlik Construction Co. (Gavlik) commenced an action on May 1, 1974 in the Pennsylvania Court of Common Pleas claiming that it had performed construction work for the defendant H. F. Campbell Co. (Campbell) under seven subcontracts but had not received full payment. On June 20, 1974 Campbell petitioned for removal of the Gavlik action to the United States District Court for the Western District of Pennsylvania under 28 U.S.C. § 1441 on the basis of 28 U.S.C. § 1332.[1] That same day Campbell moved for a stay of proceedings in the district court pending arbitration.

At the same time Campbell removed the Gavlik action another suit brought by Harry Dunn Company was then pending against Campbell in the United States District Court for the Western District of Pennsylvania.[2] On July 1, 1974 Campbell moved pursuant to Rule 42(a), Fed.R.Civ.P., to consolidate the Gavlik and Dunn actions.[3]

Campbell filed a third-party complaint in the Gavlik action against The Wickes Corp. (Wickes) on July 2, 1974.[4] In the third-party complaint Campbell alleged that Wickes was liable to it for any amount that Campbell might be found liable to Gavlik plus a fee as provided in their contract. On July 3, 1974 Campbell moved for a stay of all proceedings with respect to the third-party defendant Wickes pending arbitration.

Gavlik moved to dismiss Campbell's motion for a stay of proceedings pending arbitration and to require Campbell to answer its complaint on July 16, 1974. Campbell, on November 18, 1974, amended its motions for stays pending arbitration in the Gavlik action by seeking an order compelling Gavlik, Campbell, and Wickes to submit to a consolidated arbitration. On December 5, 1974 Gavlik responded by moving to dismiss Campbell's amended motion for a stay of proceedings and a consolidated arbitration. Wickes did not contest Campbell's motion for a stay of the third-party complaint[5] or Campbell's amended motion for a consolidated arbitration.

The district court entered an order on September 2, 1975,[6] (1) granting a stay

---

1. Gavlik, a Pennsylvania corporation, and Campbell, a Michigan corporation, satisfy both the diversity of citizenship and the amount in controversy requirements of 28 U.S.C. § 1332.

2. *Harry Dunn Company v. H. F. Campbell Company,* Civil Action No. 74–501.

3. The district court denied the motion to consolidate these actions on September 12, 1974.

4. The district court had jurisdiction over the third-party complaint on the basis of 28 U.S.C. § 1332. Campbell, a Michigan corporation,

and Wickes, a Delaware corporation, fulfilled the diversity of citizenship and the amount in controversy requisites of 28 U.S.C. § 1332.

5. Wickes asserted in its answer to the third-party complaint that the dispute was subject to arbitration under the Wickes-Campbell contract. *See* Third Defense in Wickes' Answer to Third Party Complaint.

6. The district court originally entered an order that was appended to the foot of its memorandum of February 24, 1975. Both Campbell

of proceedings pending arbitration between Gavlik and Campbell, (2) requiring Gavlik and Campbell to proceed forthwith with arbitration procedures, and (3) denying the request for consolidated arbitration. Both Gavlik and Campbell timely appealed from the district court's order. As later appears (III, *infra*), we have jurisdiction pursuant to 28 U.S.C. §§ 1291, 1292(a)(1).

## II. FACTS

Owner Wickes entered into a contract on October 6, 1972 with general contractor Campbell for the construction of a sales and warehouse facility in Allegheny County, Pennsylvania. Under this agreement Campbell was to be paid for the cost of the work plus a contractor's fee. Article 18 of the Wickes contract provided that all disputes arising from the agreement would be decided by arbitration.[7] This contract also contained numerous provisions relating to subcontractors.

Pursuant to this general contract, Campbell entered into a series of written subcontract agreements with subcontractor Gavlik. Under these subcontracts Gavlik agreed to ". . . be bound to the Contractor by the terms and provisions of all of the Contract Documents,[8]

and Gavlik timely appealed from this order. Pursuant to a stipulation of the parties, the district court stayed its order pending disposition of the appeals. However, to comply with Rule 58, Fed.R.Civ.P., (*see United States v. Schiavo,* 504 F.2d 1, 8 n. 17 (3d Cir. 1974), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 690, 42 L.Ed.2d 688 (1974)), the district court thereafter entered its order of September 2, 1975 from which these appeals were timely taken. The parties' appeals were then consolidated. Hence the order with which we are concerned is the September 2, 1975 order, which in substance is the same as the earlier February 24, 1975 order, and which in its charging provisions reads:

> (1) It Is Hereby Ordered that the Motion for Stay Pending Arbitration and the Amended Motion for Stay of Proceedings Pending Arbitration, both filed by the Defendant, H. F. Campbell Company, are hereby granted insofar as they requested that all proceedings in this cause be stayed, and all proceedings in this cause are hereby stayed

". . . ." and assumed toward the contractor all obligations which the contractor had to the owner. Gavlik subcontracts, art. 7. Furthermore, article 22 of the Gavlik subcontracts provided that "[a]ny disagreement arising out of this Agreement or any other Contract Document . . . shall be submitted to arbitration. . . ."

Gavlik commenced this suit to recover $53,798.85 allegedly owing under the subcontracts.

## III. JURISDICTION

Gavlik seeks review of the district court's orders staying proceedings pending arbitration and requiring it to proceed to arbitration with Campbell. Campbell appeals from the order denying consolidated arbitration.

### A. *Stay of District Court Proceedings*

Here, in an action to recover money damages, the district court has stayed proceedings pending arbitration. We have in similar circumstances held that such a stay constitutes the grant of an interlocutory injunction appealable under 28 U.S.C. § 1292(a)(1). In *McCreary Tire & Rubber Co. v. CEAT,* 501 F.2d 1032, 1034–35 (3d Cir. 1974), we said:

> pending arbitration of all claims between plaintiff and the original defendant;
>
> (2) It Is Further Ordered that plaintiff and original defendant proceed forthwith with arbitration procedures in accordance with the subcontract agreement between the parties; and
>
> (3) It Is Further Ordered that the Amended Motion for Stay of Proceedings Pending Arbitration filed by the Defendant, H. F. Campbell, insofar as it requests an Order compelling plaintiff, defendant and the third-party defendant to submit to a consolidated arbitration is hereby denied.

7. Article 18 appears in text at p. 788 *infra.*

8. Under article 7 of the Gavlik subcontracts, [t]he "Contract Documents" wherever referred to herein consist of: This Agreement [the subcontract] and any Exhibits hereto, The General Contract between the Owner and Contractor. . . .

The order denying a stay pending arbitration is not a final order appealable under § 1291. But McCreary's complaint seeks recovery of money damages and no other relief. Since this suit would, prior to the merger of law and equity, have been an action at law, the motion for a stay pending arbitration is treated as a motion for an injunction against continuing the action at law. It is appealable pursuant to § 1292(a)(1) as an order denying an injunction.

*See Enelow v. New York Life Insurance Co.,* 293 U.S. 379, 55 S.Ct. 70, 79 L.Ed. 642 (1935); *Shanferoke Coal & Supply Corp. v. Westchester Service Corp.,* 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583 (1935); *Kirschner v. West Co.,* 300 F.2d 133 (3d Cir. 1962).

■ To the extent that the district court ordered proceedings stayed under paragraph (1) of its order of September 2, 1975,[9] this Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

### B. *Order Compelling Arbitration*

In *Goodall-Sanford v. Textile Workers,* 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031 (1957), the Supreme Court held that an order directing arbitration in a suit brought under Section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), was appealable. The Court reasoned that

> . . . [a]rbitration is not merely a step in judicial enforcement of a claim nor auxiliary to a main proceeding, but the full relief sought. A decree under § 301(a) ordering enforcement of an arbitration provision in a collective bargaining agreement is, therefore, a "final decision" within the meaning of 28 U.S.C. § 1291.

353 U.S. at 551–52, 77 S.Ct. at 921.

We followed the *Goodall-Sanford* decision in *Rogers v. Schering Corp.,* 262

9. *See* note 6 *supra.*

10. *See also City of Naples v. Prepakt Concrete Co.,* 490 F.2d 182, *reh. denied,* 494 F.2d 511,

F.2d 180, 182 (3d Cir. 1959), *cert. denied,* 359 U.S. 991, 79 S.Ct. 1121, 3 L.Ed.2d 980 (1959), where we stated in a commercial arbitration context:

> It is settled that an order for arbitration is a final appealable decision where it is not merely a step in the judicial enforcement of a claim nor auxiliary to a main proceeding but is the full relief sought.[10]

■ The order compelling commercial arbitration here, like the order compelling labor arbitration in *Goodall-Sanford, supra,* represents the "full relief" sought by Campbell. Once the parties are directed to arbitration, judicial involvement in the controversy for all practical purposes ends, as it is the arbitrator who then resolves all matters in dispute. Hence, the arbitration order of September 2, 1975, being neither a step in the judicial enforcement of the disputed claims, nor auxiliary to any main proceeding, is a final decision over which we have jurisdiction pursuant to 28 U.S.C. § 1291.

### C. *Order Denying Consolidated Arbitration*

■■ Where the district court has ordered the parties to proceed with separate arbitrations, an order denying consolidated arbitration also constitutes a final decision within the meaning of 28 U.S.C. § 1291. Section 1291 was enacted

> . . . to disallow appeal from any decision which is tentative, informal or incomplete. Appeal gives the upper court a power of review, not one of intervention. So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal.

· · · · ·

*Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221,

513 (5th Cir.), *cert. denied,* 419 U.S. 843, 95 S.Ct. 76, 42 L.Ed.2d 71 (1974).

1225, 93 L.Ed. 1528 (1949). The denial of a motion to consolidate arbitrations in the context presented here not only terminates judicial involvement but requires the two arbitrations to proceed as independent and separate arbitrable controversies, each seeking full relief as to the contested claims. *See Goodall-Sanford v. Textile Workers, supra,* and *Rogers v. Schering Corp., supra.* An order leading to this substantive result is final and absolute as opposed to "tentative, informal, or incomplete." *Cohen v. Beneficial Industrial Loan Corp., supra* at 546, 69 S.Ct. 1221. Based upon a "practical rather than a technical construction" of 28 U.S.C. § 1291, as required by the Supreme Court in *Cohen v. Beneficial Industrial Loan Corp., supra* at 546, 69 S.Ct. at 1226, we hold the district court's denial of consolidation an appealable final decision.[11]

## IV. WAIVER

Gavlik argues that Campbell waived its contractual right to arbitrate when it filed a third-party complaint against Wickes and then attempted to consolidate the Gavlik and Dunn actions pending in the district court. The district court interpreted these acts as "certainly not waiver but . . . a procedurally sound attempt to achieve a desired result." *Gavlik Construction Co. v. H. F. Campbell Co.,* 389 F.Supp. 551, 553 (W.D. Pa.1975).

■■ Under both federal and Pennsylvania law,[12] arbitration is a favored policy for the resolution of disputes.[13] Therefore waiver "is not to be lightly inferred. . . ." *Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir. 1968). We believe it is not the inconsistency of a party's actions, "but the presence or absence of prejudice which is determinative of the issue" of waiver. *Id.* In *Demsey & Associates, Inc. v. S.S. Sea Star,* 461 F.2d 1009, 1018 (2d Cir. 1972), citing *Carcich, supra,* the Second Circuit stated that

[m]erely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not necessarily constitute a waiver.

Recent cases have only found waiver where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery.[14]

■ Here Campbell moved for a stay pending arbitration immediately after removing the Gavlik action to federal

---

**11.** We find the case law as to the appealability of orders denying consolidation in civil actions inapposite here. In *Nolfi v. Chrysler Corp.,* 324 F.2d 373 (3d Cir. 1963) and *United States v. Chelsea Towers, Inc.,* 404 F.2d 329 (3d Cir. 1968), we held that the denial of a motion to consolidate two civil suits was interlocutory in nature and not appealable under 28 U.S.C. § 1291. Such a motion in a civil action is interlocutory because it is only one step in the ultimate resolution of the controversy. However, here, the denial of consolidated arbitration brings judicial involvement to an end because arbitration is the only relief sought.

**12.** *See* V and VI *infra* for a discussion of whether state or federal law governs the interpretation of the arbitration clause in the Gavlik subcontracts.

**13.** In *Mendelson v. Shrager,* 432 Pa. 383, 248 A.2d 234, 235 (1968), the Supreme Court of Pennsylvania stated:

. . . our statutes encourage arbitration and with our dockets crowded and in some jurisdictions congested arbitration is favored by the courts.

*See Borough of Ambridge Water Authority v. Columbia,* Pa., 328 A.2d 498, 500 (1974); *Hussey Metal Division v. Lectromelt Furnace Division,* 471 F.2d 556, 558 (3d Cir. 1973).

The United States Arbitration Act, 9 U.S.C. § 1 *et seq.,* embodies the favorable federal attitude to arbitration in the commercial context. *See also Carcich v. Rederi A/B Nordie,* 389 F.2d 692, 696 (2d Cir. 1968).

**14.** *See, e. g., Demsey & Associates, Inc. v. S.S. Sea Star, supra; American Locomotive Co. v. Gyro Process Co.,* 185 F.2d 316, 320 (6th Cir. 1950); *E. C. Ernest, Inc. v. Manhattan Construction Co.,* 387 F.Supp. 1001, 1033 (S.D.Ala. 1974); *Liggett & Myers Inc. v. Bloomfield,* 380 F.Supp. 1044, 1047 (S.D.N.Y.1974); *Sulphur Export Corp. v. Carribean Clipper Lines, Inc.,* 277 F.Supp. 632, 634 (E.D.La.1968).

court. Campbell has not answered Gavlik's complaint and neither party has commenced discovery. Most importantly, Gavlik has failed to show any prejudice resulting from Campbell's actions in filing a third-party complaint and moving for a consolidation of the Dunn and Gavlik suits. The Second Circuit test of waiver, *Carcich v. Rederi A/B Nordie, supra,* is persuasive in these circumstances. Tested by the presence or absence of prejudice, we agree with the district court that Campbell's minimal procedural actions did not waive its right to arbitrate.

## V. POWER TO STAY PROCEEDINGS

Campbell contends that the district court derived power to stay proceedings pending arbitration from Section 3 of the United States Arbitration Act, 9 U.S.C. § 3.[15] On the other hand, Gavlik argues that Campbell has failed to sustain its burden of establishing that the subcontracts evidence "a transaction involving commerce" so as to come within 9 U.S.C. § 3.[16]

 The district court made no findings as to whether the Gavlik subcontracts evidence a "transaction involving commerce", the predicate for applying the United States Arbitration Act. Hence, it could not, and therefore did not, determine the applicability of that statute. The absence of these findings precludes our consideration of the applicability of the act. We could, of course, remand to the district court for its finding as to "commerce" if no other alternative were available. However, here we are concerned with the power of a court to order a stay of proceedings pending arbitration. That power, we have previously held, is not dependent upon statutory authority alone, but rather is inherent in the court itself. *Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Comm'n,* 387 F.2d 768 (3d Cir. 1967).

In *Merritt-Chapman* the district court relied on the Pennsylvania Arbitration Act, 5 P.S. § 161 *et seq.,* to authorize the stay of proceedings which it ordered. That act, however, limited relief to the Pennsylvania Court of Common Pleas. In affirming the stay, the Court did not rely on the authority of the Pennsylvania Act but rather held that

[s]uch a remedy [stay pending arbitration] is one which is within the inherent power of a court and does not require statutory authority. As Mr. Justice Cardozo said in *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936), the power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." (Footnote omitted.) 387 F.2d at 773.

 We note in passing that had Campbell not removed the Gavlik action from the Pennsylvania Court of Common Pleas, where Gavlik commenced the suit, it would have been able to invoke the Pennsylvania Arbitration Act to stay

---

**15.** 9 U.S.C. § 3 provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

**16.** The Supreme Court held in *Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 202, 76 S.Ct. 273, 100 L.Ed. 199 (1956), that a federal court's power under 9 U.S.C. § 3 only extends to those contracts within the scope of 9 U.S.C. §§ 1, 2. Section 2 covers "any maritime transaction or a contract evidencing a transaction involving commerce."

proceedings.[17] By our holding here "we do no more than what a Pennsylvania court would do if the proceeding were before it. . . ." *Merritt-Chapman & Scott Corp. v. Pennsylvania Turnpike Comm'n, supra* at 773. We thus avoid reaching "a substantially different result" from that which would have been reached by the state court, *Guaranty Trust Co. v. York,* 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), and effectuate the policy enunciated in *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## VI. ARBITRABILITY OF THE DISPUTE

Had the district court found the federal arbitration act applicable to these proceedings, we would look to federal law in the interpretation of the arbitration agreement. As we noted, however, the district court's failure to make the essential commerce finding precludes resort to that act. Hence, in interpreting the arbitration clause, we are obliged to look to the relevant state law rather than federal law. *Erie R. Co. v. Tomp-*

*kins, supra.* Both parties argue that the law of the place of performance under the subcontracts, Pennsylvania, governs the scope of the arbitration clause.[18] We may review the district court's determination of whether the Gavlik subcontracts provide for arbitration as a question of law.

Gavlik contends that its claim for payment due, following its complete performance under the subcontract, is not arbitrable. This argument is based upon the last sentence of Article 22 of the subcontract which provides:

. . . The Subcontractor shall not cause a delay of its work due to any disagreement or dispute or during any arbitration resulting therefrom, except by agreement with Contractor.

Under Gavlik's theory, this work delay clause limits arbitration to those disputes that arise only during the course of performance.

Gavlik, in seeking authority for this position, relies upon our decision in *Hussey Metal Division v. Lectromelt Furnace Division,* 471 F.2d 556 (3d Cir. 1973), and the Pennsylvania cases cited

---

**17.** 5 P.S. § 162 provides:

If any suit or proceeding be brought upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall, on application of one of the parties made before the suit or proceeding is at issue, stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

**18.** Each Gavlik subcontract states in Article 32 that

[t]his agreement shall be construed in accordance with the Laws of the State of Michigan insofar as the same may legally be made applicable thereto.

While normally we would adhere to the choice of law to which the parties have agreed, *see Boase v. Lee Rubber & Tire Corp.,* 437 F.2d 527, 529 (3d Cir. 1970), neither party in brief or oral argument has referred to Michigan law or to Article 32. This leads us to believe that

the parties have abandoned that provision of their subcontracts. However, we need not decide whether the parties have waived Article 32 of their subcontracts since the arbitration policies of both states appear identical. Pennsylvania and Michigan case law construe arbitration clauses liberally and resolve all doubts in favor of arbitration. *See McCandless v. Ward W. Ross, Inc.,* 45 Mich.App. 342, 206 N.W.2d 455 (1973); *Borough of Ambridge Water Authority v. Columbia, supra*; *Hussey Metal Division v. Lectromelt Furnace Division, supra.* We, therefore, apply Pennsylvania law, which the parties have relied upon, recognizing that our analysis would not be different under Michigan law.

Under Pennsylvania law,

judicial inquiry is limited to the question of whether an agreement to arbitrate was entered into and whether the dispute involved falls within the scope of the arbitration provision.

*Flightways Corp. v. Keystone Helicopter Corp.,* Pa., 331 A.2d 184, 185 (1975). Neither Gavlik nor Campbell denies that the subcontracts provide for arbitration; they only differ as to the scope of the arbitration clause.

therein. In *Hussey* this Court considered an arbitration clause consisting of three basic parts: (1) a broad provision providing for arbitration of all disputes, (2) a provision ensuring that construction work would not be delayed during arbitration, and (3) a provision requiring a demand for arbitration no later than the time for final payment. The question in *Hussey* was whether a party could invoke the arbitration clause after having completed its performance under the contract in order to resolve a dispute as to a payment owing.

We held in *Hussey* that the dispute was not subject to arbitration. In so doing, we relied on the Pennsylvania Supreme Court's construction of identical contract provisions in *Westmoreland Hospital Assoc. v. Westmoreland Construction Co.*, 423 Pa. 255, 223 A.2d 681 (1966) and *Emmaus Municipal Authority v. Eltz*, 416 Pa. 123, 204 A.2d 926 (1964). In *Westmoreland, supra,* a party sought to invoke the contract arbitration clause following receipt of final payment for its performance. The Pennsylvania Supreme Court stated that

. . . the arbitration clause is not applicable in this case for the reason that, by its very terms, it obviously was not meant to apply where the contract was completed and there could be no need for a speedy resolution of a dispute. A reading of the terms of arbitration make it clear that the purpose of providing for arbitration was to settle those differences, that, arising during the course of construction, might have unduly interrupted completion of the work. . . .

*Westmoreland Hospital Assoc. v. Westmoreland Construction Co., supra* 223 A.2d at 682.

■ The Gavlik arbitration clause differs from the arbitration clause found in *Hussey, supra.* Article 22 of the Gavlik subcontracts [19] contains a broad arbitration provision and a work delay provision. However, Article 22 does not require that a demand for arbitration be made prior to a certain date. It is this latter provision, found in *Hussey* but not here, that we find to be crucial. While the inclusion of both a work delay and a time limitation clause *together* restrict arbitration to disputes arising during the course of construction, that result does not follow from the work delay clause alone.[20]

---

**19.** Article 22 provides:

Any disagreement arising out of this Agreement or any other Contract Document or from the breach thereof shall be submitted to arbitration, and judgment upon the award rendered may be entered in the Court of the forum, state or federal, having jurisdiction. It is mutually agreed that the decision of the Arbitrators shall be a condition precedent to any right of legal action that either party may have against the other. The Arbitration shall be conducted pursuant to the Construction Industry Rules of the American Arbitration Association prevailing at the time arbitration proceedings are initiated. The arbitrators shall be a panel of three—one selected by the Contractor, one selected by the Subcontractor, and the third selected by the first two Arbitrators. The Subcontractor shall not cause a delay of its work due to any disagreement or dispute or during any arbitration resulting therefrom, except by agreement with Contractor.

**20.** Our interpretation of the work delay clause is supported by the Pennsylvania Supreme Court's recent decision in *Chester City School Authority v. Aberthaw Construction Co.,* Pa., 333 A.2d 758 (1975). In *Chester* the Pennsylvania Court considered an arbitration clause providing as follows:

7.10.1 All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof . . . shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules . . . . .
7.10.2 . . . The demand for arbitration shall be made within . . . . a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall it be made after institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.
7.10.3 The Contractor shall carry on the Work and maintain the progress schedule during any arbitration proceedings, unless otherwise agreed by him and the Owner in writing.

█ The broad scope of Article 22 of the Gavlik subcontracts requires our finding that a dispute as to payment owing following performance is to be arbitrated. We therefore hold that Gavlik's claim against Campbell "falls within the scope of the arbitration provision." *Flightways Corp. v. Keystone Helicopter Corp., supra* at 185.

## VII. CONSOLIDATION

Campbell contends that the Gavlik subcontracts, when read together with the Wickes contract, provide for consolidated arbitration among Gavlik, Campbell, and Wickes. Even if the subcontract and contract agreements do not, by their terms, provide for consolidation, Campbell argues that the district court abused its discretion in not ordering consolidation under the appropriate Federal Rules of Civil Procedure.[21]

The district court found that the Gavlik subcontracts failed to provide for consolidated arbitration. It relied on the terms of Article 22 of the Gavlik subcontracts that the arbitrators were to be chosen "one . . . by the Contractor, one . . . by the Subcontractor, and the third . . . by the first two Arbitrators" as "clearly impl[ying] that only those two parties were expected to participate in any arbitration." 389 F.Supp. at 556. Furthermore, the court found no reason to exercise any power that might exist under the Federal Rules of Civil Procedure to consolidate the arbitrations.

█ We have said that under Pennsylvania law "the court must decide whether a party is bound to arbitrate and what issues it must arbitrate." *Hussey Metal Division v. Lectromelt Furnace Division, supra* at 557; *Flightways Corp. v. Keystone Helicopter Corp., supra* at 185. We may therefore review as a question of law the district court's determination of whether the parties' agreements provided for consolidated arbitration.

Each of the contracts here confers rights and obligations upon all three parties. The agreement between Wickes and Campbell requires that

> [a]ll portions of the Work that the Contractor's organization has not been accustomed to perform shall be performed under subcontracts.

Wickes contract, art. 12.1. Moreover, the Wickes contract specifies that all subcontracts entered into by Campbell are to protect Wickes' rights with respect to the subcontract work and are to provide for subcontractor compliance with the terms of the Wickes contract. *Id.*, art. 12.2.[22]

*Id.* at 762. The court there emphasized that the work delay provision had to be read "in context with the other pertinent provisions." *Id.* at 763. Where the contract provided that a demand for arbitration could be made until the applicable statute of limitations ran, the work delay clause existed

> . . . only to provide for continuation of work in those areas not related to the disagreement. It clearly was not an attempt to further amend § 7.10.2 which set forth the time limitations on the right to demand arbitration.

*Id.* at 764.

Thus the Pennsylvania Supreme Court recognized that a work delay clause does not necessarily create a time limitation for disputes subject to arbitration.

**21.** Campbell relies on Rules 81(a)(3) and 42(a), Fed.R.Civ.P. *See Robinson v. Warner,* 370 F.Supp. 828 (D.R.I.1974).

**22.** Article 12.2 provides:

12.2 All work performed for the Contractor by a Subcontractor shall be pursuant to an appropriate agreement between the Contractor and the Subcontractor (and where appropriate between Subcontractors and Subsubcontractors) which shall contain provisions that:

> .1 preserve and protect the rights of the Owner under the Contract with respect to the Work to be performed under the subcontract so that the subcontracting thereof will not prejudice such rights;
> .2 require that such Work be performed in accordance with the requirements of the Contract Documents;
> .3 require submission to the Contractor of applications for payment under each subcontract to which the Contractor is a party, in reasonable time to enable the Contractor to apply for payment in accordance with Article 14;

Wickes agreed to reimburse Campbell for the "Cost of the Work" as defined by the contract. *Id.*, art. 6. This cost included

[p]ayments made by the Contractor to Subcontractors for Work performed pursuant to subcontracts under this Agreement.

*Id.*, art. 9.1.6. However, Wickes refused to reimburse any

[c]osts due to negligence of any Subcontractor, anyone directly or indirectly employed by any of them, or for whose acts any of them may be liable including but not limited to the correction of defective work, disposal of materials, and equipment wrongly supplied, or making good any damage to property.

*Id.*, art. 10.1.5. The Wickes contract thus established the requisites of subcontractor performance and the terms for compensation.

Furthermore, Wickes unqualifiedly contracted to arbitrate all disputes arising from or relating to the contract, without any limitation upon the parties that might be involved. The relevant provision of the Wickes contract is Article 18 which reads:

All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, except for claims which have been waived by the making or acceptance of final payment as hereinafter provided, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the

American Arbitration Association then pertaining unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

▆▆ Gavlik's claim for compensation arises from performance under a subcontract entered pursuant to the Wickes contract. Obviously, the Gavlik-Campbell dispute is one "arising out of, or relating to" the Wickes contract. As we read Article 18 of the Wickes contract, Wickes is obligated to arbitrate, not only with Campbell, but with Gavlik or any other subcontractor for work performed on this project.[23]

Similarly, we find that Gavlik is subject to consolidated arbitration. Article 7 of the Gavlik subcontracts provides that

[t]he Subcontractor shall be bound to the Contractor by the terms and provisions of all of the Contract Documents, and assumes toward the Contractor, with respect to the Subcontractor's work, all of the obligations and responsibilities which the Contractor, by the Contract Documents has assumed toward the Owner. . . .

Gavlik thereby accepted all the "terms and provisions" of the Wickes contract as binding upon it. In particular Gavlik

.4 require that all claims for additional costs, extensions of time, damages for delays or otherwise with respect to subcontracted portions of the Work shall be submitted to the Contractor (via any Subcontractor or Sub-subcontractor where appropriate) in sufficient time so that the Contractor may comply in the manner provided in the Contract Documents for like claims by the Contractor upon the Owner;
.5 waive all rights the contracting parties may have against one another for damages caused by fire or other perils covered by the property insurance described in Paragraph 19.3, except such rights as they may have to

the proceeds of such insurance held by the Owner as trustee under Paragraph 19.3; and
.6 obligate each Subcontractor specifically to consent to the provisions of this Paragraph 12.2.

**23.** Nor has Wickes argued before the district court or before us that it is not bound by Article 18 of the Wickes-Campbell contract to arbitrate with Gavlik. *See* Brief of Third Party Defendant/Appellee. Wickes' position is only that consolidation should not be ordered because Gavlik's contract does not so provide.

assumed the requirements of Article 18 of the Wickes-Campbell agreement that

> [a]ll claims, disputes and other matters in question arising out of or relating to this Contract or the breach thereof, . . . shall be decided by arbitration. . . .

 Gavlik's claim against Campbell for payment is a claim "arising out of or relating to this [Wickes] contract. . . .". This interrelationship is substantiated by Article 25 of the Gavlik subcontracts which reserves to Campbell

> . . . the right to withhold any progress payment or any such final payment until partial or full payment for said work has been tendered by the Owner to the Contractor. . . .

Any alleged failure by Campbell to compensate Gavlik necessarily raises questions under Articles 9 and 10 of the Wickes contract as to whether these costs are to be reimbursed by Wickes.[24] *See* p. 788, *supra.* Our reading of Article 7 of the Gavlik subcontracts and Article 18 of the Wickes contract, together with the other relevant provisions cited, leads to the conclusion that the contracts provided for consolidated arbitration of subcontractor disputes.[25]

 Nor do we find that this interpretation of Article 7 of the Gavlik subcontracts is inconsistent with the arbitration provisions of Article 22 of the Gavlik subcontracts.[26] Article 22 expressly provides for arbitration between Gavlik and Campbell and specifies the arbitrator selection procedure. Those disputes solely between Gavlik and Campbell are governed by Article 22. But the claim for payment here necessarily raises questions concerning the obligations of both the contractor and the owner. Only three-party arbitration, available under Article 18 of the Wickes contract[27] but not under Article 22 of the Gavlik subcontracts, could resolve such a dispute. Article 18 of the Wickes contract and Article 22 of the Gavlik subcontracts thus provide for the arbitration of both two-party and multi-party disputes. We therefore hold that a consolidated arbitration of Gavlik's claim for compensation with Campbell and Wickes is required under the subcontractor and owner contracts.[28]

By this holding we in no way intimate any view as to the merits of the parties' claims, one against the other. The liability, if any, of each party to the other is not for us to determine, but rather for the arbitrator.

## VIII. CONCLUSION

Having concluded that Campbell did not waive its right to arbitrate, that all proceedings were properly stayed pend-

---

24. *See* the sworn deposition of Robert J. Birdsall, Controller and Treasurer of H. F. Campbell Company (November 12, 1974):

> Q: . . . Now, why has Gavlik not been paid by Campbell?
> A: Generally because Wickes hasn't paid us, specifically.

25. *See also Uniroyal, Inc. v. A. Epstein and Sons, Inc.,* 428 F.2d 523 (7th Cir. 1970).

26. Article 22 of the Gavlik subcontracts states that "[t]he arbitrators shall be a panel of three—one selected by the Contractor, one selected by the Subcontractor, and the third selected by the first two Arbitrators."

27. Article 18 of the Wickes contract which provides for arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association (Association), is made applicable to Gavlik through Article 7 of the Gavlik subcontracts. The relevant rules of the Association provide for the submission of a list of potential arbitrators' names to the parties and a procedure for selection, including appointment of arbitrators by the Association itself if the parties cannot agree. (Construction Industry Arbitration Rules 1, 12, and 16).

28. *See also Uniroyal, Inc. v. A. Epstein and Sons, Inc., supra.*

In light of our holding that the Gavlik and Wickes contracts provide for consolidated arbitration, we need not reach nor decide the issue of whether the district court had power to order consolidation under the Federal Rules of Civil Procedure, particularly where the Federal Arbitration Act has not been applied. *See Robinson v. Warner, supra.*

**790**

ing arbitration, and that consolidated arbitration should be ordered, we will affirm so much of the district court's order of September 2, 1975 as stayed all proceedings pending arbitration. However, to achieve the consolidated arbitration which we have held is required, we will vacate so much of the district court's order as denied consolidated arbitration and limited arbitration to Gavlik and Campbell only and direct that an order be entered compelling consolidated arbitration among Gavlik, Campbell and Wickes.

Accordingly, the order of September 2, 1975 will be affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. Each party will bear its own costs.