860 F.2d 1078
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Willard M. ARNOLD, in his individual capacity and as Trustee
for Charles V. Arnold and Steven T. Arnold,
Plaintiff-Appellant,
v.
The ARNOLD CORPORATION--PRINTED COMMUNICATIONS FOR BUSINESS;
Wayne C. Jira; John E. Lautzenheiser; Jeffrey Kenner;
John W. Jordan, II; Howard P. Colhoun; Edward C. Mabbs;
Richard T. Lindgren; Carl Marks & Company, Inc.,
Defendants-Appellees.
 No. 87-3825.
 United States Court of Appeals, Sixth Circuit.
 Oct. 12, 1988.
 
 Before KENNEDY and BOYCE F. MARTIN, Jr., Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Willard Arnold, individually and as Trustee for his grandsons, Charles and Steven Arnold, appeals from the district court's July 30, 1987 order compelling arbitration of the claims set forth in his amended complaint. For the following reasons, we vacate the district court's judgment and remand this case for further proceedings.
 
 I.
 
 2
 Willard Arnold founded Arnold Graphic Industries, Inc. (A.G.I.), predecessor of the Arnold Corporation--Printed Communications for Business (Arnold Corporation), in 1951, and ran the company for thirty years. During this time, Arnold was President, Chief Executive Officer, and principal stockholder of A.G.I.
 
 
 3
 In July of 1980, representatives of Carl Marks & Co., a broker-dealer registered pursuant to the Securities Exchange Act, approached Arnold with a proposal to acquire a substantial majority of the shares of A.G.I. Thereafter, through a series of transactions consummated in January of 1981, A.G.I. merged with and became a wholly-owned subsidiary of CM-Graphic Acquisitions, Inc. (CM-Graphic), a company formed by Carl Marks & Co. for the purposes of the merger.
 
 
 4
 Under the terms of a subscription agreement executed in connection with the merger, a trust for the benefit of Arnold's grandsons subscribed to twenty percent of the common stock of A.G.I., ultimately retaining seventeen percent thereof, and Arnold subscribed to an aggregate of twenty-three percent of the preferred stock of CM-Graphic for a total purchase price of $100,000 and $300,000 respectively. Arnold was elected Chairman of the Board of Directors of CM-Graphic. Appellees Jordan and Kenner were also elected to the Board of Directors of CM-Graphic. Additionally, Jordan was elected President and Kenner was elected Vice-President, Secretary, and Treasurer of the new parent corporation. At all times relevant to this litigation, the remaining appellees, with the exception of Carl Marks & Co., were also officers and/or on the Board of Directors.[1]
 
 
 5
 Pursuant to a plan of merger and partial liquidation dated December 31, 1981, CM-Graphic changed its name back to Arnold Graphic Industries, Inc. In August of 1982, A.G.I. became Arnold Corporation.
 
 
 6
 On August 6, 1985, Arnold, individually and as Trustee, entered into a stock purchase agreement with Arnold Corporation. The stock purchase agreement provided, inter alia, for the sale by Arnold and the purchase by Arnold Corporation of 300 shares of the preferred stock held by Arnold in his individual capacity and 170,000 shares of the common stock held by Arnold as Trustee. The stock purchase agreement recited that Arnold Corporation was to purchase Arnold's preferred stock for the original subscription price of $300,000 and Arnold's common stock held in trust for $2.2 million or approximately thirteen dollars per share. Arnold Corporation accounted for the purchase of the common stock, however, at an aggregate price of $1.7 million or ten dollars per share.
 
 
 7
 At the sole insistance of Arnold Corporation, the stock purchase agreement included an arbitration provision which has become the focus of the instant case. That arbitration provision provides as follows:
 
 
 8
 This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio including its conflicts and choice of law principles. Any dispute arising under this Agreement shall be submitted to arbitration under the rules of the American Arbitration Association at its Cleveland office. The decision of the arbitrators shall be binding and entitled to be enforced as the judgment of a court of record.
 
 
 9
 Soon after Arnold's relinquishment of the Arnold Corporation stock, the company began acting in a manner which Arnold had not foreseen. Just three months after the sale of Arnold's preferred stock to the company, the Board of Directors formally approved a plan which called for payment of accrued dividends on preferred stock in 1986 and 1987.[2]
 
 
 10
 Additionally, appellees Jira, Lautzenheiser, Mabbs, Lindgren, Colhoun, Jordan, Kenner and Carl Marx & Co. soon reissued a substantial number of the relinquished shares of common stock to themselves at a subscription price of only seven dollars per share. Appellees Jira and Lautzenheizer paid the subscription price partially in the form of long-term promissory notes, which were payable upon the sale or merger of Arnold Corporation.
 
 
 11
 Arnold Corporation was sold to Reynolds and Reynolds Company soon thereafter. Reynolds and Reynolds paid over sixty dollars per share for the stock of Arnold Corporation. Appellees profited handsomely from this transaction.
 
 
 12
 On December 16, 1986, Arnold filed a complaint in the United States District Court for the Northern District of Ohio against Arnold Corporation, alleging violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder, violations of the Ohio Securities Act, and common law fraud. On January 29, 1987, Arnold Corporation filed a motion to compel arbitration or in the alternative to dismiss for failure to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b). On April 6, 1987, Arnold filed a first amended complaint which added the remaining appellees. The first amended complaint also added allegations of Racketeer Influenced and Corrupt Organizations Act (RICO) violations and breach of fiduciary duty to the allegations contained in the first complaint. On May 20, 1987, appellees responded by filing a motion to compel arbitration[3] or in the alternative to dismiss the first amended complaint for failure to state a claim upon which relief can be granted and for failure to plead fraud with particularity and to dismiss certain parties for lack of venue and lack of in personam jurisdiction.
 
 
 13
 On July 30, 1987, the district court filed a memorandum opinion and order which granted appellees' motion to compel arbitration. The district court's order reads in full as follows:
 
 
 14
 For the reasons set forth in the Memorandum Opinion filed contemporaneously with this Order, IT IS HEREBY ORDERED, ADJUDGED and DECREED that the defendants' motion for an order requiring the plaintiff to arbitrate the claims set forth in the Amended Complaint is granted.
 
 
 15
 The parties shall commence the arbitration process no later than forty (40) days following the filing of this order.
 
 
 16
 In the event the plaintiff prosecutes an appeal from this order, the obligation of the parties to commence the arbitration process shall be stayed until the appellate process is completed.
 
 
 17
 In the event one or more of the defendants named in the plaintiff's amended complaint shall hereafter protest being included in the arbitration, the plaintiff shall have standing to move this Court to reinstate the amended complaint as to any such defendant who so protests being included in the arbitration procedure.
 
 
 18
 IT IS SO ORDERED.
 
 
 19
 On appeal, Arnold argues that the district court's order compelling arbitration was in error because the amended complaint alleges a well-founded claim of fraud in the inducement of the arbitration agreement. Alternatively, Arnold argues that the nonsignatory appellees were neither intended beneficiaries of the arbitration provision nor agents of Arnold Corporation, and that, therefore, their motion to compel arbitration should have been denied. Oral argument was held these issues.
 
 
 20
 Following oral argument, however, appellees filed a motion to dismiss this appeal for lack of jurisdiction pursuant to Federal Rule of Appellate Procedure 27 and Local Rule 8(a)(1) of the Rules of the United States Court of Appeals for the Sixth Circuit. In the wake of extensive briefing on this issue, we agree with appellees that the jurisdictional issue is dispositive of this appeal.
 
 II.
 
 21
 In Gulfstream Aerospace Corp. v. Mayacamas Corp., 108 S.Ct. 1133, 1142 (1988), the Supreme Court overruled the cases establishing the Enelow-Ettelson[4] doctrine and held that orders granting or denying stays of legal proceedings on equitable grounds are interlocutory orders which are not automatically appealable under 28 U.S.C. Sec. 1292(a)(1). Prior to Gulfstream Aerospace, the Enelow-Ettelson doctrine and section 1292(a)(1) were invoked in appeals from district court orders staying a legal action pending arbitration because an agreement to arbitrate a legal dispute was considered an equitable defense for Enelow-Ettelson purposes. E.g., Shanferoke Coal & Supply Corp. v. Westchester Serv. Corp., 293 U.S. 449, 452 (1935); Gavlik Constr. Co. v. H.F. Campbell Co., 526 F.2d 777, 781-82 (3d Cir.1975); Wren v. Sletten Constr. Co., 654 F.2d 529, 532-33 (9th Cir.1981) (per curiam); Dorton v. Collins & Aikman Corp., 453 F.2d 1161, 1163 (6th Cir.1972). See Denley v. Shearson/American Express, Inc., 733 F.2d 39, 41 (6th Cir.1984) (per curiam) (appeal from grant of motion to stay proper under Enelow-Ettelson and section 1292(a)(1) but untimely). On the other hand, courts had also held that orders granting or denying stays of equitable proceedings pending arbitration were interlocutory orders that were not appealable because the Enelow-Ettelson doctrine did not apply. E.g., Hartford Fin. Sys. v. Florida Software Servs., 712 F.2d 724, 726-27 (1st Cir.1983); Poriss v. Haacon Auto Transport, Inc., 685 F.2d 56, 59-60 (2d Cir.1982); Whyte v. Thinc Consulting Group, Int'l, 659 F.2d 817, 818-19 (7th Cir.1981).
 
 
 22
 The demise of the Enelow-Ettelson doctrine in Gulfstream Aerospace has affected the appealability of orders granting or denying stays of legal proceedings pending arbitration. E.g., DeFuertes v. Drexel, Burnham, Lambert, Inc., No. 88-1448 (1st Cir. August 26, 1988) (per curiam); McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co., 849 F.2d 761, 763-65 (2d Cir.1988); Commonwealth Ins. Co. v. Underwriters, Inc., 846 F.2d 196, 197-99 (3d Cir.1988). As McDonnell Douglas Finance Corp. recognized, however, Gulfstream Aerospace indicated that interlocutory orders which traditionally had been appealable under the Enelow-Ettelson doctrine could still be appealable in appropriate circumstances in one of three ways:
 
 
 23
 First, such orders might, at times, be appealable under the so-called 'collateral order' doctrine first established in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). See Gulfstream, 56 U.S.L.W. at 4248, --- U.S. at ----, 108 S.Ct. at 1142-43 (citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Second, such orders could be reviewable under the permissive certification procedure provided by 28 U.S.C. Sec. 1292(b). Finally, such orders could, in some exceptional circumstances, be reviewable through a petition for a writ of mandamus.
 
 
 24
 McDonnell Douglas Fin. Corp., 849 F.2d at 763-64. In McDonnell Douglas Finance Corp., the Second Circuit dismissed the appeal for lack of jurisdiction and remanded it to district court to consider whether its order denying a stay pending arbitration should be certified for immediate appeal pursuant to section 1292(b). Id. at 765.
 
 
 25
 Some cases, however, have held all along that orders compelling arbitration and granting or denying stays pending arbitration are final orders which are appealable pursuant to 28 U.S.C. Sec. 1291. E.g., Goodwin v. Elkins & Co., 730 F.2d 99, 101-02 n. 2 (3d Cir.), cert. denied, 469 U.S. 831 (1984); Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co., 706 F.2d 155, 158 (6th Cir.1983) (action to require arbitration); City of Naples v. Prepakt Concrete Co., 494 F.2d 511, 512-13 & n. 1 (5th Cir.), cert. denied, 419 U.S. 843 (1974). But see Zosky v. Boyer, 87-1782 (3d Cir. Sept. 8, 1988). These cases stand in contrast to cases which have held that orders compelling arbitration in the context of ongoing litigation, like orders granting or denying stays pending arbitration, are interlocutory orders. E.g., Hartford Fin. Sys., 712 F.2d at 728-29; Whyte, 659 F.2d at 818.
 
 
 26
 In the instant case, several ambiguities in the district court's memorandum opinion and order preclude review of the thorny issue of this court's appellate jurisdiction. Appellees' motion to compel arbitration pursuant to 9 U.S.C. Sec. 4 also requested a stay pending arbitration pursuant to 9 U.S.C. Sec. 3. The district court's memorandum opinion and order expressly grant appellees' motion to compel arbitration, but are silent as to appellees' request to stay the proceedings pending arbitration. Additionally, the district court's order appears to be final in some respects. For example, the district court's order is recorded as a judgment entry on the district court's docket sheet. Furthermore, the order states that Arnold shall have standing to move that court to reinstate the amended complaint as to any defendant who was not a signatory to the stock agreement who protests being included in the arbitration procedure. That appellant would have to reinstate the complaint as to those defendants may suggest that the complaint was dismissed. In other respects, however, the order appears interlocutory. For example, the district court's memorandum opinion and order do not expressly dismiss the complaint. Furthermore, the statement that appellant may move the district court if certain defendants resist arbitration may suggest that the district court has retained jurisdiction.
 
 
 27
 In light of these ambiguities, we VACATE the district court's judgment and REMAND this case for clarification of the district court's order. The district court shall specify which of appellees' requests it has granted. If in the district court's judgment, its order is interlocutory, we invite it to consider certification for immediate appeal pursuant to section 1292(b).
 
 
 
 [1]
 Appellee Jira was President, Chief Executive Officer and a member of the Board of Directors and of its Executive Committee. Lautzenheiser was Vice President-Finance and Administration and acted as Secretary of the Board of Directors. Colhoun was a member of the Board of Directors. Mabbs was a member of the Board of Directors and Chairman of its Executive Committee. Lindgren was a member of the Board of Directors
 
 
 [2]
 At no time between January 1, 1981 and August 6, 1985 had Arnold received payment of any preferred stock dividends. Pursuant to the provisions of Arnold Corporation's restated certificate of incorporation, Arnold's share of accrued and unpaid dividends had accumulated to approximately $85,500
 
 
 [3]
 While the motion is captioned "motion to compel arbitration," the motion specifically requests an order pursuant to 9 U.S.C. Secs. 3 and 4 compelling arbitration and staying the action pending arbitration
 
 
 [4]
 See Enelow v. New York Life Ins. Co., 293 U.S. 379 (1935); Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188 (1942)