CEC ENERGY CO., INC., Plaintiff,

v.

VIRGIN ISLANDS WATER AND POWER AUTHORITY; and Virgin Islands Public Services Commission, Defendants.

Civ. No. 1985–202.

District Court, Virgin Islands,
D. St. Croix.

Feb. 28, 1991.

Frederick G. Watts, St. Thomas, V.I., and Eugene F. Bannigan, Lord, Day & Lord, Barrett Smith, New York City, for CEC Energy Co., Inc.

Samuel Hall, St. Thomas, V.I., for Virgin Islands Water and Power Authority.

Maria T. Hodge, St. Thomas, V.I., for Virgin Islands Public Services Com'n.

Joel H. Holt, Special Master, Christiansted, St. Croix, V.I.

## MEMORANDUM

HUYETT, District Judge, Sitting by Designation.

This cause is before the court on motion of defendant, Virgin Islands Water and Power Authority ("WAPA"), to vacate the injunction previously entered in this action, to discharge the special master assigned to monitor the injunction, and to declare the agreement between the parties, which forms the basis of this dispute, terminated.

Plaintiff, CEC Energy Co., Inc. ("CEC"), seeks an order staying the proceedings, and compelling arbitration of WAPA's claim that the agreement between the parties is terminated, and CEC's claims for breach of contract and indemnity. Because CEC consents to vacation of the injunction, and to discharge of the special master, and for the reasons stated below, WAPA's motion shall be granted in part and denied in part. CEC's motion to stay the proceedings shall be denied as moot. CEC's motion to compel arbitration shall be granted in relevant part.

In early 1985, CEC's parent company, Donaldson, Lufkin & Jenrette, a New York investment bank, began discussions with WAPA about the possibility of providing a 20 megawatt electric power generating facility (the "Facility") on the Island of St. Croix, U.S. Virgin Islands. These discussions eventually led to the signing of an agreement (the "Agreement") on May 23, 1985, whereby CEC would be responsible for the design, construction, financing, installation and operation of the proposed Facility.

Soon after the Agreement was signed, a number of local entities, disappointed with the Agreement, attempted to foil its execution. South Shore Alumina, a competing local group attempted to obtain a similar contract with WAPA through its connections with the Virgin Islands government. General Engineering Corp., a losing bidder for the project, filed a law suit to void the Agreement. Several members of the WAPA board in favor of maintaining the Agreement were removed in the political fray that followed.

These events spawned three separate law suits which were consolidated into this action and tried in a six day nonjury trial by the late Chief Judge David V. O'Brien. Judge O'Brien upheld the validity of the Agreement, and enjoined all other parties from interfering with the rights and obligations created under the Agreement.[1]

Section 14 of the Agreement stated certain conditions under which either CEC or WAPA is permitted to terminate the Agreement. More specifically, section 14.3 of the Agreement permits WAPA, at its option, to terminate the Agreement if the Facility is not operational within four years of the signing of the Agreement.

On August 5, 1987, CEC and WAPA executed an amendment to the Agreement changing the date on which the Agreement is deemed to have been signed for purposes of sections 14.1.1, 14.1.2, and 14.3 of the Agreement, from May 23, 1985 to January 23, 1987. The effect of the amendment was to extend the date on which the Facility was required to be operational from May 23, 1989 to January 23, 1991. The amendment extended the date on which WAPA was permitted to terminate the Agreement to January 23, 1991.

On March 11, 1988, a consent order was entered into by CEC and WAPA appointing Joel Holt Esq. as a special master to oversee compliance with the permanent injunction issued by the court, and to monitor compliance of the parties with their obligations under the Agreement.

The special master was given broad powers to "complete and implement the Service Agreement, bearing in mind that the 'Facility' ... must be in full operation on or before December 31, 1990." Consent Order at ¶ 3. An aggrieved party could appeal any decision of the special master to the court within three days of its issuance. Consent Order at ¶ 4. The court was to enforce any decisions of the special master not complied with by the parties. Consent Order at ¶ 5. None of the parties have appealed any of the special master's numerous orders.

CEC's damage claims for tortious interference of the Agreement were stayed pending the special master's recommendation to the court that discovery recommence and the damage claims be pursued in the court. Consent Order at ¶ 6.

CEC candidly admitted on the record that it is unable to complete the Facility by the completion date, and cannot predict when

---

1. His very thorough opinion and recitation of the facts of the matter is found in *General* *Engineering Corp. v. Virgin Islands Water and* *Power Authority*, 636 F.Supp. 22 (D.V.I.1985).

the Facility could possibly be operational. Nor has CEC secured financing, or the required permits, for the Facility.

On December 17, 1990, counsel for WAPA sent a letter to CEC stating that WAPA was exercising its right, under section 14.3, to terminate the Agreement because the Facility is not yet operational, and there is no hope of completing the Facility in the near future.

A hearing on the motions was held on February 14, 1991, at which, CEC presented the testimony of E. Jay Lobit, a consultant for CEC.[2] The hearing recommenced in chambers on February 21, 1991. In chambers, CEC consented, on the record, to WAPA's motion to vacate the injunction and discharge the special master.[3] CEC specifically reserved its right to seek indemnity, and money damages on the basis that the Agreement was not lawfully terminated.[4]

WAPA's request for a judgment declaring that the Agreement is terminated is moot for two reasons. Firstly, WAPA unilaterally terminated the Agreement by its December, 17, 1990 letter notifying CEC that WAPA was exercising its right under section 14.3 to terminate the Agreement. Secondly, the question of termination was initially before the court only as a prerequisite to the vacation of the injunction. We need not address the issue of termination because CEC and WAPA have stipulated that the injunction shall be vacated, and the special master discharged. Further, CEC stated on the record that it does not envision completing the Facility at this point, and that WAPA is free to contract with other parties for the completion of a similar facility, subject to CEC's claims for indemnity and breach of the Agreement.[5]

CEC's moved to stay the proceedings and compel arbitration of the following issues: a) whether the Agreement has terminated or has been extended as a result of WAPA's conduct; b) whether WAPA has breached the Agreement since the injunction was entered, and if so, what are CEC's damages; c) whether CEC is entitled to indemnity pursuant to section 16 of the Agreement for WAPA's alleged breaches of the Agreement; and d) whether CEC is entitled to compensatory damages for WAPA's alleged breach of the Agreement prior to the injunction.

Section 19 of the Agreement contains an arbitration provision which states in pertinent part:

19.1. Any dispute between the Parties, other than a dispute relative to payment obligations hereunder, or a dispute relating to any provision of Section 12 hereunder, arising out of the making, performance or breach of this Agreement shall be resolved by arbitration conducted in accordance with the rules of the American Arbitration Association....

Section 33 of the Agreement states that "[t]his Agreement shall be governed by and construed in accordance with the laws of New York or the United States as applicable."

The Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "Act"), states that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy ... shall be valid, irrevocable, and enforceable...." 9 U.S.C. § 2 (1947).[6] Where a valid written agreement to arbitrate exists, an aggrieved party may apply to the district court for an

---

**2.** Affidavits and counter affidavits were also filed by the parties.

**3.** CEC and WAPA stated that the record was complete concerning matters not resolved by consent, and pending before the court.

**4.** CEC claims that the date on which the Facility is required to be operational was extended, either because of force majeure, or WAPA's bad faith.

**5.** Section 25 of the Agreement states that "Termination of this Agreement for any reason will not relieve [CEC] or [WAPA] of any obligation accruing or arising prior to such termination."

**6.** Section 1 of the Act defines commerce as "commerce among the several states or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any state or foreign nation...." 9 U.S.C. § 1 (1947).

order directing the parties to proceed to arbitration. 9 U.S.C. § 4 (1947).

■ The Agreement contemplated the purchase and sale of electric power and steam between a New York Corporation and a Virgin Islands public utility. The Agreement involved the purchase of generators from a third party located outside the Virgin Islands to be installed at the Facility. Also, the Agreement required CEC to obtain financing for the multi-million dollar Facility. The Agreement quite plainly involved commerce. *See generally Ferreri v. First Options of Chicago, Inc.*, 623 F.Supp. 427, 432 (E.D.Pa.1985) (the district court must first make a finding that the transaction involved commerce as defined by the Act). Clearly, the Act is applicable.

■ Federal law applies in construing, and enforcing an arbitration clause, once it is determined that the Act applies. *Goodwin v. Elkins & Co.*, 730 F.2d 99, 108 (3d Cir.1984). There is a strong federal policy favoring the arbitration of disputes. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–942, 74 L.Ed.2d 765 (1983); *Gavlik Construction Co. v. H.F. Campbell Co.*, 526 F.2d 777, 783 (3d Cir.1975).

■ WAPA contends that CEC waived its right to seek arbitration of disputes arising under the Agreement because: 1) CEC filed this lawsuit in the district court; 2) CEC consented to the appointment of the special master; and 3) the issue of whether the Agreement was breached is not arbitrable under the terms of the arbitration provision in the Agreement.

The Supreme Court has stated that:

any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Moses H. Cone Memorial Hospital*, 460 U.S. at 24–25, 103 S.Ct. at 941–942; *Ferreri v. First Options of Chicago, Inc.*, 623 F.Supp. 427, 433 (E.D.Pa.1985). Actions inconsistent with the intent to arbitrate are not determinative of whether a party has waived its right to arbitration. The party opposing arbitration must show prejudice. *Gavlik Construction Co.*, 526 F.2d at 783 (citing In *Dempsey & Associates, Inc. v. S.S. Sea Star*, 461 F.2d 1009, 1018 (2d Cir.1972)); *Brobst v. Dean Witter Reynolds, Inc.*, No. 86–6077, 1987 WL 26630 (E.D.Pa. Dec. 7, 1987) (LEXIS, Genfed Library, 3rd File).

■ CEC's filing of this lawsuit in district court for tortious interference with the Agreement did not waive its right to seek arbitration of its breach of contract, and indemnity claims. This action named initially as defendants a number of individuals and entities that were not parties to, nor bound by, the arbitration provision in the Agreement. CEC could not have obtained jurisdiction of all the original named defendants had it pursued its tortious interference claims in arbitration proceedings. While an arbitrator has the authority to order specific performance of a contract, pursuant to Rule 43 of the AAA Commercial Arbitration Rules, an arbitrator has no authority to enjoin persons, or entities, not party to the arbitration agreement. The filing of this lawsuit by CEC does not evidence any intent to waive its right to arbitration.

■ CEC's consent to the appointment of a special master did not waive its right to seek arbitration. The consent order appointed the special master to oversee compliance with the injunction, and to ensure that the parties fulfilled their obligations under the Agreement. The consent order did not address the issue of arbitration in any way. The consent order gave the special master authority to enforce the injunction. The special master had no authority to adjudge a party liable for breach of contract, nor award damages for breach of contract. The special master's function was limited to monitoring compliance with the injunction, and resolving questions regarding implementation of the Agreement.

■ WAPA's assertion that CEC's claims for breach of contract are not arbitrable is without merit. Section 19 of the

Agreement states that "[a]ny dispute ... other than a ... dispute relating to any provision of Section 12 hereunder, arising out of the making, performance or breach of this Agreement ... shall be resolved by arbitration...." WAPA asserts that CEC's claims for breach of contract are excluded from arbitration because they relate to section 12 of the Agreement. Section 12 of the Agreement defines and provides remedies for events of default. Section 12(b) of the Agreement states in relevant part that:

> the failure by one party to observe or perform any covenant, condition, agreement or undertaking under this Agreement, that prevents the operation of the Facility hereunder, for a period of 180 days after notice specifying such failure and requesting that it be remedied is given to the other party, unless such other party shall agree, in writing, to an extension of such time prior to its expiration. ....

The parties are permitted to sue in law or equity to obtain a remedy for a continuing event of default pursuant to section 12.2 of the Agreement. CEC's claims are not for default under section 12. Further, section 12 was intended to provide an expedient resolution to disputes arising after the Facility is operational to prevent any long term cessation of power generation. CEC's claims for indemnity and breach of contract are arbitrable pursuant to section 19 of the Agreement.

There is no evidence that WAPA will be prejudiced if CEC's claims are resolved in arbitration. The claims CEC seeks to arbitrate have not yet been litigated. More importantly, there are no U.S. district judges sitting permanently in the Virgin Islands presently, because of existing vacancies. A judge sitting here by designation can not be expected to assume management, for all purposes, including trial, of this action because of its complexity. For these reasons, CEC's claims for indemnity and breach of contract shall proceed to arbitration.

CEC's damage claims for tortious interference with the Agreement were stayed pursuant to ¶ 6 of the consent order. There is no longer any reason for these claims to be held in abeyance. CEC shall be free to proceed, in this action, with its damage claims for tortious interference.

CEC has consented to the vacation of the injunction, and discharge of the special master. The injunction shall be vacated, and the special master shall be discharged.[7] WAPA's request for a declaratory judgment that the Agreement is terminated shall be denied as moot. CEC's motion to stay the proceedings shall be denied as moot. CEC's request to compel arbitration of its claims for indemnity, and damages for breach of the Agreement shall proceed to arbitration. CEC shall be free to pursue its damage claims for tortious interference with the Agreement.

---

7. The special master, Joel Holt Esq., performed his duties in a highly competent manner, and it is significant indeed that none of his numerous orders as special master were appealed to the district court. The court expresses its deep appreciation to Mr. Holt for his invaluable assistance in resolving amicably the many questions arising under the Agreement.